IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| SIG SAUER, INC.<br>72 Pease Boulevard<br>Newington, N.H. 03801,<br><br>    Plaintiff<br><br>    v.<br><br>B. TODD JONES<br>Director<br>Bureau of Alcohol, Tobacco, Firearms<br>and Explosives<br>99 New York Avenue, N.E.<br>Washington, D.C. 20226,<br><br>    Defendant | Civil Action No. 1:14-cv-00147-PB |

**FIRST AMENDED COMPLAINT**

1. This is an action for judicial review and for declaratory relief regarding whether a device designed and intended as a muzzle brake to reduce recoil in the discharge of a firearm constitutes a "part intended only for use" in the assembly or fabrication of a firearm silencer in the meaning of 18 U.S.C. § 921(a)(24).

JURISDICTION AND VENUE

2. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as it arises under the laws of the United States.

3. Venue is proper in the District of New Hampshire under 28 U.S.C. § 1391(e)(1)(C) as the plaintiff resides in the District of New Hampshire.

PARTIES

4. Plaintiff Sig Sauer, Inc., is a federally-licensed manufacturer of firearms whose principal place of business is located in Newington, New Hampshire.

1

5. Defendant B. Todd Jones is the Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), which administers and enforces the federal Gun Control Act. The Firearms Technology Branch ("FTB") is a component of ATF which Jones supervises, directs, and oversees.

STATUTORY BACKGROUND

6. The Gun Control Act ("GCA"), 18 U.S.C. § 921, *et seq.*, regulates and restricts firearms. "The term 'firearm' means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device." § 921(a)(3).

7. 18 U.S.C. § 921(a)(24) provides:

The terms "firearm silencer" and "firearm muffler" mean any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication.

8. The GCA imposes licensing requirements on persons who manufacture, import, and deal in firearms. 18 U.S.C. § 923. The GCA imposes controls on the interstate movement and the transfer of firearms, and prohibits certain categories of persons from lawfully receiving or possessing firearms. § 922. The GCA also requires manufacturers of firearms to mark the firearms they produce with a serial number and other required markings, § 923(i), and to keep records of their acquisition and disposition of firearms. § 923(g)(1)(A). Silencers are regulated in the same manner as all other firearms under the GCA.

9. The National Firearms Act ("NFA"), 26 U.S.C. § 5801 et seq., also regulates and restricts firearms, although they are generally defined more narrowly than in the GCA.

However, the NFA incorporates the GCA definition of "firearm" as including "any silencer (as defined in section 921 of title 18, United States Code) . . . ."  26 U.S.C. § 5845(a)(7).

10.  The definitions of "firearm" in 18 U.S.C. § 921(a)(3) and of "firearm silencer and firearm muffler" in § 921(a)(24) do not include a muzzle brake, which is a device at the muzzle end of the barrel that uses the emerging gas behind a projectile to reduce recoil or "kick" from firing a gun.  Accordingly, the provisions of the GCA do not apply to a muzzle brake.

## FACTS

11.  Plaintiff Sig Sauer designed a muzzle brake for commercial sale to the general public.  As a muzzle brake, it effectively reduces recoil and muzzle rise when a shot is discharged.  It is not subject to regulation under the GCA.  Accordingly, it will be highly marketable to consumers and will generate profit.

12.  The subject muzzle brake does not silence, muffle, or diminish the report of a firearm, is not a part intended only for use in assembly or fabrication of a silencer or muffler, and is not a "firearm silencer" or "firearm muffler" as defined in 18 U.S.C. § 921(a)(24).  However, if the device is classified as a firearm silencer or firearm muffler (hereafter referred to simply as a "silencer"), it is subject to burdensome legal requirements, including marking, record keeping, and transfer restrictions. Under such classification, no market would exist for the muzzle brake because consumers would have no incentive to subject themselves to the required burdens and costs to purchase a device that does not function as a silencer.

*Sig Sauer's Initial Submission*

13.  By letter dated April 4, 2013, Sig Sauer submitted a rifle, with the subject muzzle brake permanently affixed to the barrel, to the Firearms Technology Branch ("FTB") of ATF for

evaluation. Sig Sauer requested confirmation that "the device affixed to the forward end of the barrel is a muzzle brake and is not a silencer" as defined in 18 U.S.C. § 921(a)(24).

14. As the letter noted, the device is 9.5" long and is permanently attached by a single weld to a 6.5" barrel to bring the overall barrel length to 16". The letter advised that the end of the device is threaded to provide the customer with the option of attaching muzzle devices such as a flash hider, muzzle brake, or silencer. The letter stated: "The device is designed and intended to reduce the felt recoil of the firearm by directing the propellant gases perpendicular to the axis of the bore. It will not silence, muffle or diminish the report of the firearm."

*FTB's Initial Response*

15. The FTB responded by letter dated August 26, 2013. FTB acknowledged Sig Sauer's submission of "a rifle receiver with a device attached to its barrel, manufactured and marketed by your company as a <u>muzzle brake</u>," and accompanying request for "an examination and classification of this sample, noting that the device is threaded on the muzzle end *to provide the customer with the after-market option of attaching muzzle devices such as ... muzzle brake*...." After quoting various statutory and regulatory provisions, FTB stated about the device:

> The FTB examination found that the submitted sample is constructed from a metal casting, which is approximately 9.5 inches in length and approximately 1-1/4 inches wide at its major diameter (see enclosure for photos). The device is attached to the rifle barrel with weld. The forward end of the device contains a metal end-cap that is held to the device with threads. Additionally, FTB noted that the device contains a shelf on its rear section that facilitates attachment of an outer tube.
>
> The submitted item is designed and constructed as a silencer component commonly referred to as a "**monolithic baffle stack**." A monolithic baffle stack is a silencer core that replaces traditional individual baffle and spacer parts with a solid unit that may contain a series of baffles, spacers, ports, or expansion chambers. Welding it to a barrel does not change its design characteristics or function.
>
> Based on the findings reviewed above, the FTB examination has determined that the

submitted sample is a part intended only for use in the assembly or fabrication of a silencer and, therefore, is a silencer as defined in 18 U.S.C. 921(a)(3)(C), 18 U.S.C. 921(a)(24), and 26 U.S.C. 5845(a)(7). Hence, it is subject to regulation under both GCA and NFA provisions.

*Sig Sauer's Submission of Further Information and Request for Reconsideration*

16. By letter dated December 6, 2013, Sig Sauer submitted further information and requested that the FTB's classification of the device as a silencer be reconsidered. The basis stated for the request was that "(1) the muzzle attachment was designed and intended as a muzzle brake and is not a part intended only for use in assembling or fabricating a silencer; (2) sound meter testing indicates the device does not reduce the report of a firearm; (3) testing indicates the muzzle attachment is effective in reducing the recoil of rifles; and (4) many similar devices are being manufactured and sold as muzzle brakes without compliance with the National Firearms Act (NFA), 26 U.S.C. Chapter 53."

17. The letter documented in detail the conducting of sound meter testing of the device, concluding that "testing demonstrates that the muzzle device acts to amplify, rather than diminish, the report of a firearm."

18. Further, details were provided in which "Sig Sauer conducted recoil testing to demonstrate that the muzzle brake attached to the muzzle end of the rifle is effective in reducing recoil and muzzle rise." The letter noted: "The recoil testing provides further evidence that the muzzle device is designed and intended to function as a muzzle brake." After explaining how the design of a muzzle brake "offsets and corrects the recoil of the firearm into the shoulder of the shooter," it identified a number of one-piece units with machined slots or ports that are similar to the device at issue that are being marketed as muzzle brakes and not as silencers.

19. The letter cited and summarized several judicial precedents recognizing intent requirements and the dual uses of various devices under which the device at issue would not be considered as "any part intended only for use in . . . assembly or fabrication" of a silencer.

### *FTB Reaffirms its Prior Classification*

20. By letter dated February 21, 2014, FTB responded to the above as follows: "Based on our current review of the technical points you submitted, and on our initial examination and evaluation, FTB has concluded that your submitted sample is a part intended only for use in the assembly or fabrication of a silencer, and, therefore, is a *silencer* as defined in 18 U.S.C. 921(a)(3)(C), 18 U.S.C. 921(a)(24), and 26 U.S.C. 5845(a)(7)." The letter found "no reason to amend our earlier findings."

21. FTB's letter did not question or contest any of the information set forth in Sig Sauer's submission dated December 6, 2013. In particular, FTB saw no need to conduct any sound test and did not challenge Sig Sauer's sound tests showing that use of the muzzle brake increases rather than decreases noise. Further, although FTB again "concluded that your submitted sample is a part intended only for use in the assembly or fabrication of a silencer," it did not challenge Sig Sauer's demonstrated intent to use the device as a muzzle brake to reduce recoil and muzzle rise.

### *On Remand, ATF Reaffirms its Prior Decision*

22. After the Complaint was filed, ATF requested that this matter be remanded for further consideration, Sig Sauer consented, and this Court so ordered. The parties agreed upon, and the Court approved, a schedule for the procedure on remand, including that Sig Sauer could amend its Complaint and renew its appeal if ATF did not issue a favorable decision, which it has not.

23. In an undated letter from Earl Griffith, Chief, ATF Firearms Technology Branch, to Sig Sauer, received by Sig Sauer on August 13, 2014, ATF reaffirmed its prior decision that the device "is intended <u>only</u> for use in the assembly or fabrication of a silencer and, therefore, is a '*firearm silencer*' . . . ."

24. ATF conducted sound-meter testing and found that use of the Sig Sauer device "result[ed] in an increase of 2.41, 1.17, and 1.45 decibels to the side, front and rear of the firearm." ATF Letter, p. 15.

25. ATF listed ten design characteristics, including household items like washers and steel wool, it believes are commonly found in conventional firearm silencers. Letter p. 4. ATF conceded that "a silencer may be produced from a conventional muzzle brake when other parts are added . . . ." Letter p. 9.

26. ATF did not dispute that the Sig Sauer device is an effective muzzle brake in that it diminishes recoil and muzzle rise.

*Sig Sauer's Response*

27. Sig Sauer responded to ATF in declarations by Steven Shawver, Vice President and General Counsel for Sig Sauer, and Ethan Lessard, Design Engineer for Sig Sauer, dated and served on ATF on September 18, 2014. Also included was a thumb drive which included DVDs showing recoil testing and the functioning of the bolt when firing.

28. As the declarations demonstrate, Sig Sauer designed the rifle, with the model designation MPX, with a 6.5" barrel and a permanently-attached muzzle brake that extends the barrel by 9.5" for several reasons. First, that gives the rifle a barrel of at least 16", rendering it in demand by consumers. A rifle with a barrel under 16" in length is subject to legal requirements that most consumers wish to avoid. Transfer of such rifles, defined at 18 U.S.C. § 921(a)(8) and

26 U.S.C. § 5845(a)(3), require lengthy approval processes by and registration with ATF together with payment of a $200 transfer tax. 26 U.S.C. §§ 5811, 5812, 5841. ATF approval is required for a dealer to sell such rifles and for permission to transport such rifle in interstate or foreign commerce. 18 U.S.C. § 922(a)(4), (b)(4).

29. Second, having the rifled portion of the barrel at 6.5" in length keeps the pressures within the firing mechanism within safe limits. It was found that having the rifled portion of the barrel longer than 11" created overly-high chamber pressures when firing which would damage the rifle and possibly injure the user.

30. Third, use of the muzzle brake that extends the barrel by 9.5" effectively reduces recoil and muzzle rise.

31. Thus, the device is intended to achieve the above three goals of making a rifle available with a 16" barrel, with a design that operates properly without high chamber pressures, and with an effective muzzle brake.

32. Sig Sauer conducted tests demonstrating that the other products ATF identified as a muzzle brake can, by the addition of other parts, effectively reduce sound substantially as much as can the Sig Sauer device when covered in a similar manner. Such capability does not imply that such devices are, without the addition of other parts, intended only for use in the assembly or fabrication of a silencer.

*ATF's Final Decision*

33. ATF made a final decision reaffirming its prior decisions in a letter from Earl Griffith, Acting Chief, Firearms and Ammunition Technology Division, ATF, to Steven Shawver, dated October 2, 2014. It acknowledged receipt of Sig Sauer's submission dated September 18, 2014, stating that it considered "numerous factors," "including your purported

intended use of the item." The letter failed to discuss the content of Sig Sauer's submission or to suggest in what manner its "intended use" is "purported." ATF failed to identify any evidence to contradict Sig Sauer's stated intent that it designed and intends that its device be used as a muzzle brake.

*Causation and Injury*

34. As a proximate cause of FTB's classification, Sig Sauer has suffered and will continue to suffer economic injury. If classified as a silencer, no market exists for the subject device given that it will not silence, muffle, or diminish the report of a firearm and yet it would still be subject to the burdensome requirements set forth above as if it really is a silencer. Sig Sauer would forthwith market the device to the general public and realize profits but for the erroneous FTB classification, which is a direct and proximate cause of injury to Sig Sauer.

**COUNT I**

35. Paragraphs 1-34 are incorporated herein by reference.

36. "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Further, "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704.

37. "'[A]gency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act . . . ." 5 U.S.C. § 551(13). A "rule" is "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy . . . ." 5 U.S.C. § 551(4).

38. The FTB classification in its letters of August 26, 2013, February 21, 2014, August 13, 2014 (date of receipt), and October 2, 2014, constitutes a "rule" as defined in 5 U.S.C. § 551(4) and is "agency action" as defined in 5 U.S.C. § 551(13). Such classification constitutes "final agency action" because it was the consummation of ATF's decision-making process concerning whether the device at issue is a silencer in the meaning of 18 U.S.C. § 921(a)(24), in that it was not of a merely tentative or interlocutory nature and because it is an action by which rights or obligations have been determined.

39. The said FTB letters demonstrate that FTB failed to articulate a satisfactory explanation for its classification and failed to examine the relevant data. FTB discussed features of some parts that could be used in silencers and, without showing a nexus, jumped to the conclusion that the device here is a silencer. FTB acknowledged the use of the device as a muzzle brake and yet concluded that it is a "part intended *only* for use" in assembling or fabricating a silencer. FTB also failed to address similar devices in the marketplace that are being transferred without being treated as firearms. Accordingly, FTB's decision was arbitrary, capricious, and not in accordance with law.

## COUNT II

40. Paragraphs 1-39 are incorporated herein by reference.

41. Contrary to the FTB, the muzzle brake at issue is not "any part intended only for use in . . . assembly or fabrication" of a firearm silencer or firearm muffler in the meaning of 18 U.S.C. § 921(a)(24). As a muzzle brake, it is intended for use in reducing recoil and muzzle rise when a shot is discharged.

42. 28 U.S.C. § 2201(a) provides in pertinent part:

In a case of actual controversy within its jurisdiction, . . . . , any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal

relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

43. There is an actual controversy between the parties herein concerning the application of 18 U.S.C. § 921(a)(24) to the muzzle brake at issue. Accordingly, the device at issue should be declared not to be "any part intended only for use in . . . assembly or fabrication" of a firearm silencer or firearm muffler in the meaning of 18 U.S.C. § 921(a)(24).

WHEREFORE, Plaintiff Sig Sauer, Inc., prays that this court:

1. Hold unlawful and set aside the FTB's determination as being arbitrary and capricious, and not in accordance with law;

2. Declare that the muzzle brake at issue is not any part intended only for use in assembly or fabrication of a firearm silencer or firearm muffler in the meaning of 18 U.S.C. § 921(a)(24);

3. Award such other relief, including costs and attorney's fees pursuant to 28 U.S.C. § 2412, as appropriate.

Respectfully submitted,

Sig Sauer, Inc.
By counsel

Date: October 6, 2014

/s/ Stephen P. Halbrook
Stephen P. Halbrook, *Pro Hac Vice*
Suite 403
3925 Chain Bridge Road
Fairfax, VA 22030
(703) 352-7276
(703) 359-0938 (fax)
protell@aol.com

/s/ Mark C. Rouvalis
Mark C. Rouvalis, NH Bar No. 6565
Kenton J. Villano, NH Bar No. 21220
City Hall Plaza
900 Elm Street
Manchester, N.H. 03101
(603) 628-1329
(603) 625-5650 (fax)
mark.rouvalis@mclane.com
kenton.villano@mclane.com

Counsel for Sig Sauer, Inc.