IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

SIG SAUER, INC.,                          )
     Plaintiff                        )
                                 )
        v.                             )        Civil Action No. 1:14-cv-00147-PB
                                 )
B. TODD JONES,                            )
     Defendant                        )

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed.R.Civ.P. 56, Plaintiff Sig Sauer, Inc., sets forth the following facts, reasons, and authorities in support of its motion for summary judgment.

This is an action for judicial review under the Administrative Procedure Act and for declaratory relief regarding whether a device intended for use as a muzzle brake to reduce recoil in the discharge of a rifle is, despite that intent, a "part intended *only* for use" in the assembly or fabrication of a firearm silencer, and is thus a "silencer" in the meaning of 18 U.S.C. § 921(a)(24). Based on the plain statutory text and controlling First Circuit precedent, *United States v. Crooker*, 608 F.3d 94 (1st Cir. 2010), the device does *not* come within that definition.

A ruling that the muzzle brake at issue, like other muzzle brakes, is not a silencer will allow Sig Sauer to market the product without burdensome restrictions on the company, distributors, and purchasers. An adverse ruling will render the muzzle brake unmarketable, eliminate a product line, and cost jobs and revenue to Sig Sauer. A ruling upholding ATF's classification will also create uncertainty within the firearms industry and among law-abiding gun owners, as all muzzle brakes could potentially be regulated as silencers under the rationale articulated by ATF. If ATF's expansive and erroneous ruling is sanctioned by the court, its reach could sow confusion within the broader manufacturing community, because even non-firearms

related dual-use parts, such as lawn mower mufflers, would be subject to regulation because of their adaptability for use as silencer parts.

Plaintiff Sig Sauer, Inc., is a federally-licensed manufacturer of firearms located in Newington, New Hampshire. Defendant B. Todd Jones is the Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), which administers and enforces the federal Gun Control Act ("GCA"), 18 U.S.C. § 921 *et seq.* The Firearms Technology Branch[1] is a component of ATF which Jones supervises, directs, and oversees. Answer ("Ans.") ¶s 4, 5.

## STATUTORY BACKGROUND

The GCA defines "firearm" in part as "(A) any weapon . . . which will . . . expel a projectile by the action of an explosive" and "(C) any firearm muffler or firearm silencer . . . ." § 921(a)(3). Section 921(a)(24) provides:

> The terms "firearm silencer" and "firearm muffler" mean any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication.

The GCA imposes licensing requirements on persons who manufacture, import, and deal in firearms. 18 U.S.C. § 923. It imposes controls on the interstate movement and transfer of firearms. § 922. Manufacturers are required to mark firearms with a serial number, § 923(i), and to keep records of their acquisition and disposition of firearms. § 923(g)(1)(A). Silencers are regulated in the same manner as all other firearms under the GCA.

The National Firearms Act ("NFA"), 26 U.S.C. § 5801 *et seq.*, also regulates a more narrowly-defined subset of firearms. The NFA incorporates the GCA definition of "firearm" as including "any silencer (as defined in section 921 of title 18, United States Code) . . . ." 26

---

[1] Recently redesignated as the Firearms and Ammunition Technology Division, it will continue to be referred to herein as the Firearms Technology Branch.

U.S.C. § 5845(a)(7).  NFA firearms must be registered, § 5841, and transfer thereof requires an application with fingerprints and a photograph, payment of a $200 tax, and approval by ATF.  §§ 5811, 5812.

A muzzle brake, which is a device at the muzzle end of the barrel that uses the emerging gas behind a projectile to reduce recoil or "kick" from firing a gun, is not encompassed in the above definitions of "firearm" or of "firearm silencer and firearm muffler."  Accordingly, the provisions of the GCA do not apply to devices that are classified as muzzle brakes.  Ans. ¶ 10.[2]

## FACTS

The device at issue is intended to achieve Sig Sauer's three goals of making a rifle available with a 16" barrel, with a design that operates properly without high chamber pressures, and with an effective muzzle brake.  "Defendant admits that the Plaintiff claims this is their intent."  Ans. ¶ 31. Defendant further admits that the device "reduces recoil and muzzle rise," Ans. ¶s 11, 30.

*Sig Sauer's Initial Submission*.  By letter dated April 4, 2013, Sig Sauer submitted a rifle, with the subject muzzle brake affixed to the barrel, to the ATF Firearms Technology Branch ("FTB"), requesting confirmation that it is a muzzle brake and not a silencer.  Administrative Record ("AR") 790. The device was 9.5" long and was permanently attached by a single weld to a 6.5" barrel to bring the overall barrel length to 16".  The letter advised that the end of the device is threaded to provide the customer with the option of attaching muzzle devices such as a flash hider, muzzle brake, or silencer.  The letter stated: "The device is designed and intended to reduce the felt recoil of the firearm by directing the propellant gases perpendicular to the axis of the bore.  It will not silence, muffle or diminish the report of the firearm." AR 790.

---

[2] Defendant consistently misspells "muzzle brake" as "muzzle break."

3

*FTB's Initial Response*.  The FTB responded by letter dated August 26, 2013.  AR 791.

FTB acknowledged receipt of "a rifle receiver with a device attached to its barrel, manufactured

and marketed by your company as a muzzle brake . . . ." *Id*.  It noted that the device was threaded

on the muzzle end "to provide the customer with the after-market option of attaching muzzle

devices such as ... muzzle brake...." *Id*.  FTB called the device a "monolithic baffle stack" that

"is a part intended only for use in the assembly or fabrication of a silencer and, therefore, is a

silencer as defined in 18 U.S.C. 921(a)(3)(C), 18 U.S.C. 921(a)(24), and 26 U.S.C. 5845(a)(7)."

AR 793.

*Sig Sauer Submits Further Information*.  By letter dated December 6, 2013, Sig Sauer

submitted further information.  AR 644.  It documented its sound meter testing of the device

showing that "the muzzle device acts to amplify, rather than diminish, the report of a firearm."

AR 644-45.  It also documented further testing to demonstrate that the muzzle brake "is effective

in reducing recoil and muzzle rise."  AR 645-46.  It identified similar one-piece units with

machined slots or ports that are being marketed as muzzle brakes and not as silencers.  AR 646.

Judicial precedents, such as the First Circuit's definitive decision in *United States v. Crooker*,

608 F.3d 94 (1st Cir. 2010), were cited recognizing intent requirements and the dual uses of

various devices under which the device at issue would not be considered as "any part intended

only for use in . . . assembly or fabrication" of a silencer.  AR 646-48.

*FTB Reaffirms its Prior Decision*.  By letter dated February 21, 2014, FTB reaffirmed its

prior opinion that the device "is a part intended only for use in the assembly or fabrication of a

silencer" without addressing the further documentation provided by Sig Sauer.   AR 809.

After the Complaint was filed on April 7, 2014, ATF requested that this matter be

remanded for further consideration, Sig Sauer consented, and this Court so ordered.  Ans. ¶ 22.

*On Remand, ATF Reaffirms its Prior Decision.*  In an undated letter from Earl Griffith, Chief, FTB, to Sig Sauer, received by Sig Sauer on August 13, 2014 ("Letter"), ATF reaffirmed its prior decision that the device "is intended <u>only</u> for use in the assembly or fabrication of a silencer and, therefore, is a '*firearm silencer*' . . . ."  AR 810, 824.  However, ATF conducted sound-meter testing and found that use of the Sig Sauer device "result[ed] in an *increase* of 2.41, 1.17, and 1.45 decibels to the side, front and rear of the firearm."  AR 824 (emphasis added).

ATF stated that, based on its design, an item may be "objectively intended for use in reducing" sound rather than "to perform an incidental function."  AR 813.  However, "intent" has a plain meaning, and the second portion of the definition of silencer distinguishes design from intent: "any combination of parts, designed or redesigned, and intended for use" in assembly or fabrication of a silencer. 18 U.S.C. § 921(a)(24). ATF concedes that the second definition of silencer does not apply here unless the item is "combined with an outer tube."  AR 814.

ATF listed ten design characteristics, including household items like washers and steel wool, it believes are commonly found in conventional firearm silencers.  AR 813.  ATF conceded that "a silencer may be produced from a conventional muzzle brake when other parts are added . . . ."  AR 818.  Regarding the device at issue, "ATF did not dispute the device's diminished recoil and muzzle rise."  Ans. ¶ 26.

*Sig Sauer's Response.*  Sig Sauer responded to ATF in declarations dated September 18, 2014, by Steven Shawver, Vice President and General Counsel for Sig Sauer, AR 873, Declaration of Steven Shawver ("SS Dec.") ¶ 1; and Ethan Lessard, a Design Engineer for Sig Sauer, who has a B.S. in Mechanical Engineering and experience designing firearms, muzzle brakes, flash hiders, silencers, and other muzzle attachments.  AR 859, Ethan Lessard

Declaration ("EL Dec.") ¶s 1-2.  Also included were videos showing recoil testing and the functioning of the bolt when firing.  Ans. ¶ 27.

Sig Sauer designed the MPX rifle with a 6.5" barrel and a permanently-attached muzzle brake that extends the barrel by 9.5" for several reasons.  First, that gives the rifle a barrel of at least 16" in length, allowing it to be sold as an ordinary rifle not subject to special legal restrictions.  AR 859, EL Dec. ¶ 3; AR 873, SS Dec. ¶ 2.  Transfer of a rifle with a barrel under 16" in length requires ATF registration and approval and payment of a $200 transfer tax.  26 U.S.C. §§ 5811, 5812, 5841, § 5845(a)(3).  ATF approval is required for a dealer to sell such a rifle and for permission to transport such rifle in interstate or foreign commerce. 18 U.S.C. §§ 921(a)(8), 922(a)(4), (b)(4).

None of the above applies to a rifle with a barrel 16" or more in length.  Most consumers who purchase firearms wish to avoid the red tape, delay, expense, and waiver of certain privacy rights that are inherent in these restrictions.  AR 873, SS Dec. ¶ 3.

Second, Sig Sauer chose to design the barrel by combining a 6.5" barrel with a rifled bore and a muzzle brake to extend the barrel to 16", rather than simply using a 16" barrel with a rifled bore, in part because testing revealed that use of a barrel with a rifled bore over about 8" created dangerous pressures in the operating mechanism.  AR 874, SS Dec. ¶ 6.  When the cartridge is fired, the gases push the bolt carrier to the rear and open the bolt, ejecting the spent cartridge case.  If the barrel is too long, dangerous pressures may remain in the brass case during this sequence, potentially damaging the rifle and injuring the user.  AR 860, EL Dec. ¶s 4-5.  Too much energy can also result in failures to extract and eject, and in extreme cases, case head failures, which can cause the firearm to blow up and injure the user.  AR 860-61, EL Dec. ¶s 6-8.

A video demonstrates the time between initial bolt carrier motion and the bullet exit.  AR 861, 882.  Adding barrel length allows the bullet to stay in the barrel longer, increasing the high pressure while the bolt carrier and bolt continue to open further.  AR 861, EL Dec. ¶s 12-14.

Third, use of the muzzle brake that extends the barrel by 9.5" effectively reduces recoil and muzzle rise (jump).  AR 874, SS Dec. ¶ 6; AR 862-63, EL Dec. ¶ 15.  A "muzzle brake" is defined as follows: "Device at the muzzle end usually integral with the barrel that uses the emerging gas behind a projectile to reduce recoil."  *NRA Firearms Sourcebook* 439 (2006).  "Recoil" means: "The rearward movement of a firearm resulting from firing a cartridge or shot shell.  Sometimes informally called 'kick.'"  *Id.* at 450.  The term "muzzle jump" means: "The generally upward motion of the muzzle of a firearm which occurs upon firing."  *Id.* at 439.   AR 862-63.

Testing demonstrates that the full length of the subject muzzle brake contributes to the reduction in recoil. The braking of the gas pressure and the mass of the device both serve to reduce recoil. When a cartridge is fired and the gases escape from the muzzle, the gases flow against all of the surfaces of the muzzle brake, thereby reducing recoil.  As shown in the photographs, these gases leave gunpowder fouling on the surfaces of the entire length of the muzzle brake.  AR 863, EL Dec. ¶ 16.  ATF did not include length as a factor in its list of possible silencer features.  See AR 815, Letter; AR 872, EL Dec. ¶ 49a.

The device here is longer than other muzzle brakes so that, as explained, the barrel is considered to be at least 16" in length and dangerous chamber pressures that would occur with use of a longer rifled barrel are prevented.  AR 868, EL Dec. ¶ 35.  Were it not for the legal restriction on rifles with barrels under 16" in length, the device could be shorter.  Nonetheless,

the length of the device facilitates its ability to diminish recoil and muzzle rise.  AR 868, EL Dec. ¶ 36.

Firing the rifle with a shorter muzzle device called the A2 results in the muzzle jerking upward and the shoulder stock kicking rearward.  See video AR 883.  Firing it with the MPX muzzle brake keeps the muzzle in a straight, horizontal position and reduces kick.  See video AR 884; AR 863-64, 866, EL Dec. ¶s  17-18, 22-23.

Reduction of recoil and muzzle climb is an advantage when using a 9mm rifle for home defense and target shooting.  Muzzle brakes are even made for .22 caliber rimfire rifles.  AR 868-69, EL Dec. ¶s 37-38 (see illustration).

Sig Sauer's device is indisputably an effective muzzle brake in that it diminishes recoil and muzzle rise, and the plan is to market it as such.  ATF has not challenged SIG's findings and has not disclosed whether it even saw fit to conduct its own recoil testing.  ATF's acceptance of the fact that the device reduces recoil and muzzle rise pervades its Letter.  AR 876, SS Dec. ¶ 15.

Several of the features that ATF states are commonly found in silencers (AR 813, Letter) are also found in muzzle brakes. These include ported tubes (albeit not ported "inner" tubes), which means that they have bleed holes for gases to escape, and baffles to redirect the gases in such manner as to reduce recoil and muzzle rise.  AR 866-67, EL Dec. ¶s 25-26, see also ¶s 27-30 & illustrations.  ATF describes the SIG item as a "monolithic baffle core" with "expansion chambers, baffles, angled baffles, holes or slots."  AR 813, Letter. Because the device has no outer tube, it cannot be said to have "expansion chambers."  Muzzle brakes, including those

shown in ATF's photos (AR 821, Letter), generally have "baffles, angled baffles, holes or slots." AR 868, EL Dec. ¶ 32.[3]

Testing conducted by Sig Sauer on the muzzle brakes shown in the ATF Letter (AR 821) demonstrates that assembly of an outer tube on virtually any muzzle brake creates a silencer.  EL Dec. ¶ 34.  ATF tested the Sig device by covering it with a rubber radiator hose and found that it produced a 14.28 dB reduction in sound.  AR 868, EL Dec. ¶ 42, citing ATF Letter, p. 15 n.2 (AR 824).  Sig conducted the same test on a device ATF identified as a muzzle brake (AR 821) and got a similar result.  AR 870, EL Dec. ¶ 43.  Covered with a radiator hose, the device (called the Big Chubby) reduced sound by 15.2 decibels (dB).  AR 871, EL Dec. ¶ 46.  Thus, the device that ATF considers a conventional muzzle brake tested very similar to the Sig device.  AR 872, EL Dec. ¶ 48.

 "Defendant admits that the addition of other parts may effectively reduce the sound of a firearm."  Ans. ¶ 32.  Such capability does not imply that such devices are, without the addition of other parts, intended only for use in the assembly or fabrication of a silencer.

To make it adaptable to various further uses, the muzzle brake is threaded on the front end to allow the use of other muzzle devices such as an extended muzzle brake, flash suppressor, compensator, combinations thereof; silencer; or blank firing adapter.  AR 865, EL Dec. ¶ 20.

Finally, ATF noted that SIG's invoice dated 7/10/2014 submitting samples to ATF used the same part number (8100045) and the word "silencer" for both the subject muzzle brake and a part that can be used with other parts to make a silencer.  AR 824-25, Letter.  ATF's initial classification letter dated August 26, 2013, opined that the subject item is a silencer and instructed Sig Sauer to register it as such.  AR 791.  Sig Sauer's calling the item a "silencer" and

---

[3] The other items listed by ATF as possible silencer parts, such as steel wool and outer tubes and end caps (used on lawn mower mufflers) have various non-silencer uses.  AR 867-68, EL Dec. ¶ 31.

using the same part number for both samples reflects its compliance with ATF's determination. That will change if the Court rules otherwise.  AR 878, SS Dec. ¶ 27.

*ATF's Final Decision on Remand.*  ATF made a final decision reaffirming its prior decisions in a letter from Earl Griffith, Acting Chief, Firearms and Ammunition Technology Division, to Steven Shawver, dated October 2, 2014.  AR 885.  It acknowledged Sig Sauer's "purported intended use of the item," but failed to discuss the content of Sig Sauer's submission or to suggest in what manner its "intended use" of the device as a muzzle brake is "purported." *Id.*

## ARGUMENT

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, after which "the burden shifts to the nonmoving party, who must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor."  *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 4 (1st Cir. 2010).

"In determining what constitutes a material fact, 'we safely can ignore "conclusory allegations, improbable inferences, and unsupported speculation."'" *Coach, Inc. v. Sapatis*, 994 F. Supp.2d 192, 197 (D. N.H. 2014), quoting *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002).

This case concerns whether a muzzle brake is a silencer.  "A muzzle brake is a device attached to the muzzle (exit end) of a gun barrel to reduce perceived recoil and barrel 'bounce' that occurs when the gun is fired." *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 288 n.1 (5th Cir. 2004).

The muzzle brake here reduces both recoil and muzzle rise, and as a matter of law is not a "part intended only for use in . . . assembly or fabrication" of a silencer as defined in 18 U.S.C. § 921(a)(24).  The FTB classification to the contrary, which is final agency action, Ans. ¶ 38, should be set aside as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  See Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, § 551(4), (13).  Moreover, there is an actual controversy between the parties, Ans. ¶ 43, and based on the record, the device should be declared not to be a firearm silencer or firearm muffler in the meaning of 18 U.S.C. § 921(a)(24).  See 28 U.S.C. § 2201(a).

## I.  THE STATUTORY TEXT AND LEGISLATIVE PURPOSE CLARIFY THAT A MUZZLE BRAKE IS NOT A "PART INTENDED ONLY FOR USE" IN ASSEMBLY OR FABRICATION OF A SILENCER

The definition of silencer was enacted in the Firearms Owners' Protection Act ("FOPA"), § 101, P.L. 99-308, 100 Stat. 449, 451 (1986), which amended the Gun Control Act.  As adopted, 18 U.S.C. § 921(a)(24) provides:

> The terms "firearm silencer" and "firearm muffler" mean [1] any device for silencing, muffling, or diminishing the report of a portable firearm, including [2] any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and [3] any part intended only for use in such assembly or fabrication.  (Bracketed numbers added.)

Each of these definitions has intent standards.  A lawn-mower muffler could be adapted for use on a firearm, but it is not a device "for" muffling a firearm.  A combination of parts must be "designed or redesigned, and intended for use" in making a silencer, but a combination of parts is not a silencer merely because it may be adapted to that use.  And "any part intended only for use in such assembly or fabrication" excludes a part not intended "only" for such use, even if it could be adapted to that use.

The statutory history, administrative interpretation, and judicial construction preceding enactment of the definition in FOPA demonstrate both the general continuity of intent standards and the exclusion of muzzle brakes from being considered as silencers.  As originally passed and as reenacted, the NFA defined "firearm" in part as "a muffler or a silencer *for* any firearm . . . ." P.L. 474, 48 Stat. 1236 (1934); P.L. 90-618, 82 Stat. 1213, 1230 (1968) (emphasis added).[4] That same critical term "for," which set a clear standard of intent, also appeared in an NFA regulation that was on the books until enactment of FOPA:

> Muffler or silencer.  Any device for silencing or diminishing the report of any portable weapon, such as a rifle, carbine, pistol, revolver, machine gun, submachine gun, shotgun, fowling piece, or other device from which a shot, bullet, or projectile may be discharged by an explosive, and is not limited to mufflers or silencers for "firearms" as defined.

27 C.F.R. § 179.11 (1985); origin in 6 F.R. 4935 (Sept. 30, 1941); replaced with FOPA definition in 51 F.R. 39615, 39630 (Oct. 29, 1986).

ATF's predecessor agency did not consider a muzzle brake to be a silencer under the above provisions, and opined that permanently attaching "a sleeve-type muzzle brake to the muzzle end of a short barreled rifle" to lengthen the barrel would remove the rifle from the short-barreled category.  Revenue Ruling 55-570, 1955-2 C.B. 481, 1955 WL 10164 (IRS RRU).  AR 880.[5]

The above was reflected in pre-FOPA judicial decisions.  *United States v. Schrum*, 346 F. Supp. 537, 540 (E.D. Va. 1972), distinguished silencers from other devices as follows:

---

[4] Also as originally passed, the GCA defined "firearm" in part as "any firearm silencer or firearm muffler," without defining those terms.  P.L. 90-618, 82 Stat. 1213, 1214 (1968).

[5] That remains ATF's position today: "The ATF procedure for measuring barrel length is to measure from the closed bolt (or breech-face) to the furthermost end of the barrel or permanently attached muzzle device."  ATF, *National Firearms Act Handbook* 6 (ATF E-Publication 5320.8, 2009).  AR 873-74.

An example would be a barrel extension or a device to reduce the kick of a weapon which incidentally reduces the noise level. We feel these legitimate attachments would not be covered by the definition of a silencer, in and of themselves, because they do have as one of their primary functions the silencing or reducing of noise. Any such reduction is merely incidental to a legitimate purpose and unavoidable.[6]

The above intent would be expressed in the passage of the FOPA bill in 1986.  Known in the House as the Volkmer substitute, Reps. Harold Volkmer and Bill McCollum formulated the definition of silencer that would pass.[7]  Volkmer engaged in the following colloquy with Rep. Larry Craig to specify muzzle attachments that are not considered to be silencers:

> Mr. CRAIG. The language of the silencer definition . . . states that a silencer is "any device [f]or silencing . . ." I would like to know if this term is designed to change the current interpretation. For example, according to BATF, the current law does not include conventional chokes, muzzle breaks [*sic*], flash hiders, and compensators that are not designed or altered to be silencers, even though these devices may quash sound in addition to their other lawful purposes.

> Mr. VOLKMER. My substitute, as modified by the McCollum amendment, does not change existing law. No conventional choke, muzzle breaks [*sic*], flash hiders, or compensators will fit within the definition of silencer in the substitute because they are not "devices for silencing . . ." Each of these devices has a common sporting purpose totally apart from muffling sound. If someone modified these legitimate devices however for the purpose of silencing, then the modified device would be a silencer.

132 Cong. Rec. H1757.  AR 881.

The references to "the current interpretation" and "existing law" refer to the statutory history, regulatory interpretation, and judicial construction set forth above.  While the reference

---

[6] Similarly, *United States v. Hurd*, 642 F.2d 1179, 1182 (9th Cir. 1981), upheld a jury instruction accommodating the interpretation "that the primary purpose of the devices was to stabilize the barrel, reduce recoil and eliminate the flash caused by firing," because if "noise reduction was an incidental function of the devices, the court's instruction clearly required them to find that the devices were not silencers because noise reduction would not have been a primary function."

[7] 132 Cong. Rec., 99th Cong., 2d Sess., H1675, H1700 (1986).  When the Volkmer substitute, H.R. 945, passed, it then became "H.R. 4332, as passed by the House" (132 Cong. Rec. H1753), while "a similar House bill (H.R. 4332) [the Judiciary Committee bill] was laid on the table."  *Id*. at H1757.

in the plain text of § 921(a)(24) to "any part intended only for use in . . . assembly or fabrication" of a silencer could not be clearer in excluding a muzzle brake, the above colloquy nicely ties the text with its history. See *United States v. Marshall*, 753 F.3d 341, 345 (1st Cir. 2014) ("[W]e apply the presumption that Congress was aware of these earlier judicial interpretations and, in effect, adopted them.").

Finally, in passing the Firearms Owners' Protection Act, Congress made findings that express its intent as to how the law should be interpreted:

> [A]dditional legislation is required to reaffirm the intent of the Congress, as expressed in section 101 of the Gun Control Act of 1968, that "it is not the purpose of this title to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms appropriate to the purpose of hunting, trap-shooting, target shooting, personal protection, or any other lawful activity, and that this title is not intended to discourage or eliminate the private ownership or use of firearms by law-abiding citizens for lawful purposes."

§ 1(b), P.L. 99-308, 100 Stat. 449.[8]

### II.  THE PLAIN TEXT AS APPLIED IN BINDING PRECEDENT PRECLUDES APPLICATION OF THE TERMS "ANY PART INTENDED *ONLY* FOR USE" IN A SILENCER TO A MUZZLE BRAKE

FOPA's definition kept the reference to a device "for" silencing a firearm, adding a "combination of parts, designed or redesigned, and intended for use in assembling or fabricating" a silencer, and "any part intended only for use in such assembly or fabrication." § 921(a)(24). The requirement of intent is enhanced progressively for each of these three definitions, with the third requiring the highest level of intent, which must be exclusive.

---

[8]  See *United States v. Thompson/Center Arms Co.*, 924 F.2d 1041, 1047-48 (Fed. Cir. 1991) ("This admonition . . . requires us to decline the government's invitation to expand the definition of 'rifle' to encompass the Contender pistol and carbine conversion kit. The government admits that both pistol and carbine are intended and primarily used for the legitimate purposes of hunting and target shooting."), *aff'd*, 504 U.S. 505 (1992).

This was the focus of the First Circuit in the definitive decision of *United States v. Crooker*, 608 F.3d 94 (1st Cir. 2010), which resolves the issue here. *Crooker* involved "a device designed to muffle the sound of an airgun," which is not a "firearm," but which could be adapted for use on a firearm. *Id*. at 95. It was described as "a cylinder made of black metal with a hole running through it, threading that allowed attachment to the muzzle of the airgun and baffles inside." *Id*. ATF was able to attach it to an actual firearm by threading an "adapter" that it supplied to both the barrel and the silencer. *Id*. at 96.[9]

In language that is dispositive here, *Crooker* observed that "the statute by its terms requires something more than a potential for adaptation and knowledge of it. The statute does not refer either to capability or adaptation; it speaks of a device 'for' silencing or muffling. The ordinary connotation of the word is one of purpose." *Id*. at 97. No evidence existed that "either Crooker or the maker of the airgun silencer intended that it be used to silence a firearm . . . ." Noting the statute's further phrases "intended for use" and "intended only for use," the court "view[ed] all three tests as gradations of purpose made more rigorous as the statute extends from a self-sufficient device to a collection of parts to a single part." *Id*.

Since the airgun silencer required a further "part" (the adapter), it could have fallen "within one of the 'parts' definitions that require intent." *Id*. Intent to use, not objective capability of use or knowledge of such capability, was critical, for otherwise the definition "could also extend to a soda bottle or even a potato. The peculiar problem of silencers is that

_____

[9] Explaining that an airgun is not a "firearm," the court took note of ATF Ruling 2005-4 ("paintball gun, which uses compressed air to expel a projectile, is not a 'firearm' under the statute"). *Id*. The Ruling opined that a permanently-affixed silencer for a paintball gun is not a "firearm silencer" because "the device is not one for diminishing the report of a portable firearm." See https://www.atf.gov/files/regulations-rulings/rulings/atf-rulings/atf-ruling-2005-4.pdf. The device had a ported barrel "to allow the escape of gases from a fired round" and an outer sleeve that "dampens or muffles the sound when a round is fired," characteristics which are "similar to those of conventional commercial silencers," and it reduced sound when removed from the paintball gun and affixed to a firearm. *Id*.

many objects, including relatively innocent ones, have some capacity to muffle the sound of a shot." *Id*. Thus, "the range of physical objects that *can* muffle a firearm is so large and of so many alternative uses that some filtering restriction is needed to prevent overbreadth and possibly vagueness." *Id*. at 98.

"To read the statute literally, as we do, is conventional with criminal statutes in order to provide fair notice," the court concluded, ordering an acquittal. *Id*. at 99, citing *United States v. Lanier*, 520 U.S. 259, 266 (1997). The First Circuit's reading applies even more so to this case.

*United States v. Syverson*, 90 F.3d 227, 229 (7th Cir. 1996), involved a metal cylinder that could "reduce the report of a pistol from 151 decibels to 144.5." Noting the three definitions of silencer, the court stated: "Because Syverson was the designer and manufacturer of the cylinder, his intentions determine whether it purported to be a silencer." *Id*. at 232. Evidence existed that the defendant "intended the cylinder to be a silencer" instead of a muzzle brake because "muzzle breaks [*sic*] usually have slots cut into them; these slots are the means by which muzzle breaks disperse the hot gases expelled from a gun barrel." *Id.* The "cylinder had no slots" and "would not have done much, if anything, to reduce the recoil of a firearm," but it "did reduce the report of a pistol, albeit slightly." *Id*. By contrast, the muzzle brake at issue here has slots, reduces recoil, and *increases* the report of a firearm.

*United States v. Klebig*, 600 F.3d 700, 719 (7th Cir. 2010), concerned whether the defendant "intended to use the oil filter that was taped to the barrel of a long gun as a silencer rather than as a flash suppressor." Use as a flash suppressor "does not require registration." *Id*. at 704. Testing revealed that "the oil filter reduced the rifle report by approximately six decibels." *Id*. at 708. The court reversed due to trial errors. Again, the emphasis was on intent.

Where the parts definitions are at issue, intent to use them on a silencer is enhanced.  See *United States v. Rose*, 522 F.3d 710, 720 (6th Cir. 2008) (since "[t]he statutory definition itself encompasses parts intended for use in fabricating silencers," "a dummy silencer" would be included if the person "planned to convert [it] into a silencer").  "The language of the statute focuses on the intended application of a silencer . . . ."  *United States v. Carter*, 465 F.3d 658, 661, 667 (6th Cir. 2006) (cylinder containing another tube with holes in it and wrapped with steel wool, screwed onto pistol barrel).

The above were criminal cases, but ATF's classification of a purported muzzle brake as a silencer was held to be arbitrary and capricious and set aside in a civil case.  *Innovator Enterprises, Inc. v. Jones*, Civil No. 13–581, 2014 WL 1045975 (D.D.C. Mar. 19, 2014) ("*Innovator*").  The device reduced recoil and muzzle rise.  *Id*. at *1.

In *Innovator*, the FTB decided that the device was a silencer because it had three out of eight physical characteristics consistent with those on silencers: an expansion chamber, a ported inner tube, and an end cap.  *Id*. at *2.  That was not a satisfactory explanation, for that did not mean that the device "is actually capable of (or designed for) 'diminishing the report of a portable firearm,'. . . ."  *Id*. at *6.  "A mouse is not an 'elephant' solely because it has three characteristics that are common to known elephants: a tail, gray skin, and four legs."  *Id*. at *7.  FTB committed the same fallacy here, except that Sig Sauer's device allegedly had only a single feature of a "known silencer," and it was not even on FTB's list.

*Innovator* found that ATF failed to examine the relevant data because it conducted no test to determine if the device "is actually capable of 'diminishing the report' of a gunshot."  *Id*. at *7.  The court found both the purpose and effectiveness of a device to be relevant.  *Id*. at *8-9.  If only purpose is relevant, "then a pink silk ribbon tied in a bow around the barrel of a rifle could

be a 'firearm silencer' – as long as the ribbon's (delusional) inventor designed the ribbon with the hopes that it could be used 'for diminishing the report' of a gunshot." *Id*. at *9.

The administrative record and the complaint revealed the device's purpose to be "to reduce recoil, muzzle flash, and muzzle rise . . . ." *Id*. at *10. Yet it remained to be seen whether the device diminished the report of a firearm, as no test had been conducted. The court thus remanded the matter to the agency for further findings. *Id*. at *11.[10]

That is where the posture of the case here parts company from *Innovator*. Perhaps due to the bristling *Innovator* decision coming down before the complaint herein was filed, ATF made the unusual request that this matter be remanded so that it could make further findings. That took five months. ATF still acknowledges that the device here increases rather than diminishes sound, and that it was "manufactured and marketed by your company as a <u>muzzle brake</u>," but that did not change its opinion that the device "is intended *only* for use" in a silencer. AR 791, 793, 810, 824. That is wrong as a matter of law.

In sum, the First Circuit in *Crooker* held that a complete device that could be adapted for use as a silencer was not "for" that purpose and was thus not a silencer. Other precedents are consistent with the First Circuit in focusing on intent. There is no precedent in existence applying the silencer definition as "intended only for use" in assembly or fabrication of a silencer to any circumstances even remotely resembling the device here.

### III.  THE MEANING OF THE STATUTE IS CLEAR, THE ISSUE ARISES IN THE CONTEXT OF A CRIMINAL STATUTE, AND NO DEFERENCE TO AGENCY OPINION IS DUE

No ambiguity exists regarding the meaning of "intended only for use." The common definition of "only" is: "And no one or nothing more besides; solely or exclusively."

---

[10] A review of the docket in *Innovator Enterprises v. Jones*, Civil No. 13–581, shows that, following the court-ordered remand for reconsideration on March 19, 2014, ATF has *still* not reported any decision back to the court.

http://www.oxforddictionaries.com/us/definition/american_english/only.  "First, always, is the
question whether Congress has directly spoken to the precise question at issue.  If the intent of
Congress is clear, that is the end of the matter; for the court, as well as the agency, must give
effect to the unambiguously expressed intent of Congress."  *Chevron USA v. Natural Resources
Defense Council, Inc.*, 467 U.S. 837, 842 (1984).  That is the case here.

By ignoring the narrow "intended only for use" standard, ATF may feel that the law will
be easier to administer – the FTB can simply consult its checklist and can disregard the actual
intent of any person.  However, "Congress knows to speak in plain terms when it wishes to
circumscribe, and in capacious terms when it wishes to enlarge, agency discretion."  *City of
Arlington, Texas v. FCC*, 133 S.Ct. 1863, 1868 (2013); *id.* at 1874 (" Where Congress has
established a clear line, the agency cannot go beyond it").  "We reaffirm the core administrative-
law principle that an agency may not rewrite clear statutory terms to suit its own sense of how
the statute should operate."  *Utility Air Regulatory Group v. EPA*, 134 S.Ct. 2427, 2446 (2014).

Under *Chevron*, "if the statute is silent or ambiguous with respect to the specific issue,
the question for the court is whether the agency's answer is based on a permissible construction
of the statute."  *Chevron*, 467 U.S. at 842.  In the *Innovator* case, the court held that the FTB
letter was not entitled to *Chevron* deference because it "contain[s] little more than conclusory
assertions and head-scratching revelations about the process that FTB uses to classify silencers."
2014 WL 1045975, *3, 5.  ATF failed (1) to "articulate a satisfactory explanation" for its
decision, and (2) to "examine the relevant data" before coming to a final conclusion.  *Id.* at *3, 6,
quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29,
43 (1983).[11]

---

[11]  And see *Tripoli Rocketry Association, Inc. v. BATFE*, 437 F.3d 75, 76 (D.C. Cir. 2006), which
set aside ATF's classification of a certain propellant as an "explosive" because its explanation

Moreover, ATF's opinion here would not be entitled to *Chevron* deference in any event. *Christensen v. Harris County*, 529 U.S. 576, 580-81 (2000), held about a similar agency opinion on the law it administers as applied to certain facts as follows:

> Here . . . we confront an interpretation contained in an opinion letter, not one arrived at after, for example, a formal adjudication or notice-and-comment rulemaking. Interpretations such as those in opinion letters – like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law – do not warrant *Chevron*-style deference.

*Id*. at 587.

Although FTB opinions applying GCA and NFA definitions to specific firearms and devices are sometimes referred to as "classifications," that is an informal FTB term that is not provided by law or regulation.  Even where a statute authorizes "classification rulings," that does not entitle them to deference.  *United States v. Mead Corp*., 533 U.S. 218, 230 (2001).  "On the face of the statute, . . . the terms of the congressional delegation give no indication that Congress meant to delegate authority to Customs to issue classification rulings with the force of law." *Id*. at 231-32.  Unlike the statute in *Mead*, here Congress delegated no authority even to issue classification rulings.

Yet there is another, fundamental reason why deference may not be accorded to the agency when application of a criminal statute, as here, arises in a civil case.  If any ambiguity arises, "we are construing a criminal statute and are therefore bound to consider application of the rule of lenity." *Crandon v. United States*, 494 U.S. 152, 168 (1990). "We have never thought that the interpretation of those charged with prosecuting criminal statutes is entitled to deference." *Id*. at 177-78 (1990) (Scalia, J., concurring).

---

for the decision "lacks any coherence. We therefore owe no deference to ATF's purported expertise because we cannot discern it."

A statute has the same meaning in a civil case as it does in a criminal case.  Given that "penal statutes are to be construed strictly," *FCC v. American Broadcasting Co.*, 347 U.S. 284, 296 (1954), noted: "It is true . . . that these are not criminal cases, but it is a criminal statute that we must interpret.  There cannot be one construction for the Federal Communications Commission and another for the Department of Justice."

Thus, the issue of whether the muzzle brake here is or is not a silencer must be answered the same in this case as it would in a criminal case, with its high standard of proof.[12]  "To read the statute literally, as we do, is conventional with criminal statutes in order to provide fair notice," to repeat what the First Circuit stated about the definition of silencer.  *Crooker*, 608 F.3d at 99.  If Sig Sauer's muzzle brake would not be, under the facts here, held to be a silencer in a criminal prosecution, it cannot be so held here.

The above is well-illustrated in *United States v. Thompson/Center Arms Co.*, 504 U.S. 505 (1992) (plurality op.),  a civil case about another NFA firearm definition that is not so narrow as the "intended only for use" language here, but which was applied to exclude items with multiple uses.  The court held that a gun manufacturer does not make a short-barreled (under 16") rifle, if it markets parts as a unit that could be assembled as such, but are intended to be assembled as a pistol or as a long-barreled rifle.  *Id*. at 507, 510.[13]

*Thompson/Center* thus did not involve "a set of parts that could be used to make nothing but a short-barreled rifle . . . ." *Id*. at 510-11.  "[W]e are not dealing with an aggregation of parts that can serve no useful purpose except the assembly of a firearm, or with an aggregation having

---

[12] "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime."  *Brown v. O'Brien*, 666 F.3d 818, 824 n.1 (1st Cir. 2012) (citation omitted).

[13]  "[T]he definition of 'rifle' requires that it be 'intended to be fired from the shoulder,' § 5845(c), and the only combination of parts so intended, as far as respondent is concerned (and the record contains no indication of anyone else's intent), is the combination that forms a rifle with a 21-inch barrel."  *Id*. at 523 (Scalia, J., concurring).

no ostensible utility except to convert a gun into such a weapon." *Id*. at 513-14.  Instead, the case involved an unregulated pistol that "can be converted not only into a short-barreled rifle, which is a regulated firearm, but also into a long-barreled rifle, which is not." *Id*. at 514.

Although being "construe[d] now in a civil setting, the NFA has criminal applications . . . . It is proper, therefore, to apply the rule of lenity and resolve the ambiguity in Thompson/Center's favor."   *Id*. at 517-18.  Thus, "the Contender pistol and carbine kit when packaged together by Thompson/Center have not been 'made' into a short-barreled rifle . . . ." *Id*.

The non-deference rule was set forth most recently in *Abramski v. United States,* 134 S.Ct. 2259, 2274 (2014), in rejecting ATF's interpretation of a GCA provision:

> The critical point is that criminal laws are for courts, not for the Government, to construe. See, e.g., *United States v. Apel*, 571 U.S. –, 134 S.Ct. 1144, 1151, 186 L.Ed.2d 75 (2014) ("[W]e have never held that the Government's reading of a criminal statute is entitled to any deference").[14] We think ATF's old position no more relevant than its current one – which is to say, not relevant at all. Whether the Government interprets a criminal statute too broadly (as it sometimes does) or too narrowly. . . , a court has an obligation to correct its error.

This is not a case in which any suggestion of deference should arise in the first place. Where the statute refers to something "intended only for" a certain use and the unchallenged facts establish intent for multiple uses, a court may not defer to an agency's insistence that such multiple uses must be ignored.  Here, ATF acknowledges Sig Sauer's intent to offer a muzzle brake that works; it ignores, but offers nothing to refute, Sig Sauer's further intent to offer a rifle with a barrel 16" in length with a design that avoids dangerously-high pressures.  The device at issue is clearly not a device "intended only for use" in assembly of a silencer.

---

[14] *Apel* prefaced this statement by noting about interpretations in Executive Branch documents such as the U.S. Attorney's Manual: "Their views may reflect overly cautious legal advice . . . . Or they may reflect legal error."  *Apel*, 134 S.Ct. at 1151.

This truly is a case in which "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  ATF does not really challenge the facts as presented by Sig Sauer, particularly that the device at issue is *not* "intended only for use" in assembly or fabrication of a silencer.  ATF simply seeks to change the plain meaning of those statutory terms to suit its policy preferences.  Since there are no material facts left to uncover, yet another remand in this case would be futile.

*F. J. Vollmer Co., Inc. v. Higgins*, 23 F.3d 448, 451-53 (D.C. Cir. 1994), agreed with a firearm manufacturer that its product was a semiautomatic rifle and rejected ATF's contention that it was a machinegun.  While "[t]he administrative record does not contain the reasoning behind the Bureau's interpretation," which "alone would warrant setting aside the agency's action and remanding the case," ATF's position was legally erroneous and sufficient facts were known such that "Vollmer [the manufacturer] is entitled to a decision on these questions now."  *Id*. at 451.  While the issues were technical, the court found ATF's position that the rifle was a machinegun to be "incredible," adding that even if uncertainty existed, "we must resolve the ambiguity in Vollmer's favor . . . ."  *Id*. at 452.[15]

So too here, ATF's position that a muzzle brake with multiple uses is "intended only for use" in a silencer is "incredible," and should any ambiguity exist, it must be resolved in Sig Sauer's favor.  Under the undisputed facts here, Sig Sauer is entitled to judgment as a matter of law.

## CONCLUSION

The ATF has had at least four separate opportunities to evaluate correctly Sig Sauer's muzzle brake, including opportunities both before and after suit was filed in this case, after the

---

[15] And see *Davis v. Erdmann*, 607 F.2d 917, 920 (10th Cir. 1979) (finding ATF firearm classification "a classic example of agency 'nitpicking,' and an arbitrary and capricious action," and deciding the case on the merits).

dispositive *Crooker* case was brought to its attention, and after the *Innovator* decision, which criticized the ATF's analysis in addressing the differences between a muzzle brake and a silencer. Given these facts, and the record described above, it is clear that the agency has not followed and will not follow the law, as expressed by Congress, concerning dual-use parts, unless this Court orders it to do so.  Accordingly, Sig Sauer requests that this Court issue summary judgment in its favor, and (1) hold unlawful and set aside the FTB's determination as being arbitrary and capricious, and not in accordance with law, and (2) issue a declaratory judgment that the muzzle brake at issue is not a firearm silencer or firearm muffler in the meaning of 18 U.S.C. § 921(a)(24).

Respectfully submitted,

Sig Sauer, Inc.
By counsel

Date:  January 9, 2015

/s/ Stephen P. Halbrook
Stephen P. Halbrook, *Pro Hac Vice*
Suite 403
3925 Chain Bridge Road
Fairfax, VA 22030
(703) 352-7276
(703) 359-0938 (fax)
protell@aol.com

/s/ Mark C. Rouvalis
Mark C. Rouvalis, NH Bar No. 6565
Kenton J. Villano, NH Bar No. 21220
City Hall Plaza
900 Elm Street
Manchester, N.H. 03101
(603) 628-1329
(603) 625-5650 (fax)
mark.rouvalis@mclane.com
kenton.villano@mclane.com

Counsel for Sig Sauer, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed by the ECF system and served on all counsel of record electronically as a result thereof on the 9th day of January, 2015.

/s/ Mark C. Rouvalis
Mark C. Rouvalis