IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

SIG SAUER, INC.,                           )
     Plaintiff                           )
                                  )
           v.                           )            Civil Action No. 1:14-cv-00147-PB
                                  )
B. TODD JONES,                             )
     Defendant                           )

**PLAINTIFF'S OBJECTIONS TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 7.1, Plaintiff Sig Sauer, Inc., sets forth the following facts,

reasons, and authorities in opposition to Defendant's Motion for Summary Judgment.  Sig Sauer

requests that this Court deny Defendant's motion, and instead grant its motion for summary

judgment.

**INTRODUCTION**

The facts in this case are simple.  Sig Sauer wishes to market a rifle with a muzzle brake

that effectively reduces recoil and muzzle rise, that has a barrel at least 16" long, and that fires

without excessive pressure that could endanger the user.  Contrary to ATF, the muzzle brake is

not a "part intended *only* for use" in making a silencer within the meaning of 18 U.S.C. §

921(a)(24).

*United States v. Crooker*, 608 F.3d 94 (1st Cir. 2010), emphasized the element of intent

in holding that a device that could be converted to a silencer with the addition of another part is

not a silencer.  Like other muzzle brakes, the device here could, with the addition of other parts,

be converted to use in a silencer.  *Crooker* rejected the very argument that ATF makes here that

seeks to substitute a capability-for-use test for the statutory intent test.  The other applicable

precedents hold the same.

1

ATF appeals to legislative history, but fails to connect snippets from an early hearing to the definition that passed two years later.  Further, ATF relies on language in a bill that did not pass.  Notably, the bill that did pass enacted the critically significant word "only" in the definition.

ATF appeals to deference, but neglects the well-established doctrine that criminal statutes that arise in civil cases must be interpreted consistently.  *Chevron* deference is further inapplicable because the language of the statute is clear, any ambiguity would require application of the rule of lenity, and the agency action consists of an opinion and not a regulation.

## I.  ATF CONCEDES THAT THE DEVICE HAS THE SAME BASIC CHARACTERISTICS AS OTHER MUZZLE BRAKES, WHICH CAN BE CONVERTED INTO SILENCERS BY THE ADDITION OF OTHER PARTS, BUT WHICH ARE BY NO MEANS "INTENDED ONLY" FOR SUCH USE

The facts in the record establish that the device at issue has the same basic characteristics as other muzzle brakes, in that it effectively reduces recoil and muzzle rise.  The length of the muzzle brake is designed to ensure that the barrel is at least 16" long and that the rifle functions without high pressures that could endanger the user.  Any muzzle brake can be, with the addition of other parts, assembled or fabricated into a silencer, but neither this device nor other muzzle brakes are intended only for such use.  See statement of facts in Mem. in Support of Plaintiff's Mot. for Sum. Jud. ("Sig Mem.") 3-10.

The definition of a silencer is threefold: (1) a "device for silencing, muffling, or diminishing the report of a portable firearm," (2) "any combination of parts, designed or redesigned, and intended for use in assembling or fabricating" a silencer, and (3) "any part intended only for use in such assembly or fabrication."  18 U.S.C. § 921(a)(24).  Only definition (3) is pertinent here, as that was the definition that ATF claimed is applicable to the device at issue.  AR 793, 809-10, 824.

Before this court, ATF acknowledges that the first definition is inapplicable, but suggests that the item "is a silencer part or one of a combination of parts, not a silencer device as a whole."  Memorandum of Law in Support of Defendant's Motion for Summary Judgment 3 (hereafter "ATF Mem.").  To suggest that the device at issue, which is a single part, may be a "combination of parts" under the second definition is a post hoc argument of counsel that has no place here, for "our review is limited to the reasoning articulated below."  *Patel v. Holder*, 707 F.3d 77, 80 n.1 (1st Cir. 2013).[1]

### A. The Characteristics and Performance of the Sig Sauer Device Demonstrate that it is Intended to be Used as a Muzzle Brake

The Sig Sauer device effectively reduces recoil and muzzle rise, see videos (AR 883 & 884), and ATF does not deny it.  However, ATF argues that this shows no intent to use it as a muzzle brake, because silencers also reduce recoil.  ATF Mem. 13.  This rationale applies only to the first portion of the statutory definition, i.e.,  a complete device for muffling the report of a portable firearm.  ATF states: "Because a device that reduces recoil also reduces the report of a firearm, a fact well known, the reduction of recoil, by itself, cannot determine the purpose or function of the Sig submission."  *Id*.  By contrast, the Sig device reduces recoil but *increases* the report of a firearm.  The reduction of recoil thus can and does determine its purpose.

ATF concedes: "Because silencers and muzzle brakes do share characteristics, such as baffles and end caps, . . . the presence of these characteristics cannot be mutually exclusive for classification purposes."  ATF Mem. 17.  But ATF labels the device here as a "monolithic baffle core" that "consists of an inner core or tube, which contains progressively spaced baffles or walls

---

[1] *See Bard v. Boston Shipping Ass'n*, 471 F.3d 229, 244 (1st Cir. 2006) (refusing to "accept appellate counsel's post hoc rationalizations for agency action [because] an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself") (citation omitted).

that when assembled with an outer tube form expansion chambers." *Id*. The words "when assembled" beg the question, for the issue here concerns a device with utility when *not* so assembled and without any feature that would make it "intended only for" such assembly. Muzzle brakes generally have baffles, and the capability to assemble them with an outer tube does not make them intended only for use in a silencer.

The patents cited by ATF (ATF Mem. 17) confirm the common characteristics of muzzle brakes and monolithic baffle stacks when not used with a cover. A "monolithic baffle stack" is defined as "a single piece baffle stack as opposed to being made from multiple individual baffles." AR 693. "A stack of baffles may be formed by welding individual baffles together." AR 684. Obviously, the baffles in a muzzle brake must be held together in a single component, as individual baffles have no structural integrity that would allow them to be used as a muzzle brake. Most silencers appear to use individual baffles, in which the cover holds them together: "There are a *few* suppressors out on the market using a monolithic baffle concept, i.e., making the baffle from a single piece." AR 256 (emphasis added).

The cited patents generally refer to silencers that are made of an outside cover, end cap, and baffles. AR 254-76. Muzzle brakes generally have baffles. As ATF stated: "Monolithic baffles and muzzle brakes often share a common design feature, i.e., baffles." Remand Letter, AR 820. ATF added that baffles in a muzzle brake use gases to diminish recoil, but "the baffles in a monolithic core redirect these gases and sound waves in to a series of expansion chambers in order to reduce the report of the firearm." *Id*. But ATF's statement assumes the baffles are covered. The baffles in a monolithic core that are not covered diminish recoil like any other muzzle brake.

**B.  ATF Disregards that the Length of the Muzzle Brake to Extend the Barrel to 16″,
Coupled with the Design of Avoiding High Pressures in the Mechanism,
Preclude the Allegation that it is Intended Only for Use in a Silencer**

ATF refers to a photograph showing the Sig device, muzzle brakes, and monolithic cores used in silencers, and also to drawings in silencer patents.  ATF Mem. 17, citing AR 821, & 22, citing AR 254-276.  While varied, they all are single pieces with baffles.  The Sig device is longer than those identified by ATF as muzzle brakes, but that is the only substantive difference. The additional length allows the rifle to meet the minimum 16″ barrel length requirement and avoid regulation under the Gun Control Act (GCA) and the National Firearms Act (NFA).

Threading on the front end of the device allows the attachment of an extended muzzle brake, flash suppressor, compensator, silencer, or blank firing adapter.  Ethan Lessard Declaration (EL Dec.), ¶ 20, AR 865.  ATF states: "When combined with the conventional shorter muzzle brakes, this may make sense. However, due to the length of the Sig item, it would add length beyond which Sig considers safe." ATF Mem. 17-18 n.4, citing AR 859.  ATF's conclusion misconstrues designer Lessard's statement that "if the barrel is too long, dangerous pressures may remain in the brass case during this sequence, potentially damaging the rifle and injuring the user."  EL Dec., ¶ 4, AR 859.  His reference to "the barrel" means the rifled portion of the barrel,[2] not the muzzle brake or any attachment to the muzzle brake.[3]

---

[2] "Rifling" refers to "the spiral grooves formed in the bore of firearm barrel to impart rotary motion to a projectile."  *NRA Firearms Sourcebook* 453 (2006).

[3] "The pressure resulting from the fired cartridge peaks when the bullet is expelled from the cartridge case and connects with the rifled barrel of the firearm."  EL Dec. ¶ 7, AR 860.  Noting that "the rest of the barrel" is rifled (other than the area nearest the chamber), he added that "a barrel of 6.5-8.5 inches in length is optimal to reduce internal pressure . . . ."  ¶ 11, AR 861.  He went on to explain "why Sig Sauer chose to use a muzzle brake as a type of barrel extender to lengthen the barrel."  ¶ 15, AR 862.  The explanation was that the device is an effective muzzle brake which extends the barrel to 16″ and operates with safe pressures.

ATF further faults the device for having a ledge or shoulder on its rear "against which an outer tube would be pressed to create a gas seal."  ATF Mem. 17.  The agency disregarded the designer's explanation that: "The Sig Sauer muzzle brake has a shoulder on the rear end that properly seals certain muzzle attachments such as a silencer or a blank firing adapter."  EL Dec., ¶ 21, AR 865 (noting that the latter "allows the safe firing of blank rounds").

Ignoring that the long length of the item is necessary to offer a rifle with a barrel at least 16" in length that fires without high pressures, ATF asserts that this length "is necessary for capturing and *dissipating* the pressure of propellant gases" – which assumes that it has an outer cover, which it does not – in contrast with muzzle brakes, which "reduce recoil and counteract muzzle rise by *redirecting* the propellant gases."  ATF Mem. 18.  The latter is exactly what the device here does.  The entire length of the device redirects the gases and reduces recoil, as can be seen in the photograph showing discoloration from gunpowder fouling.  EL Dec., ¶ 16, AR 863 (with illustration).

ATF continues: "While many conventional muzzle brakes do incorporate end caps and baffles, *they are not meant to be encased* and thus do not create expansion chambers, since they are generally open at the sides and/or the top to allow the gases to escape."  ATF Mem. 18 (emphasis added).  Whether a muzzle brake is "meant to be encased" depends, of course, on the intent of the user.  Sig Sauer wishes to market rifles with the device to consumers who will have the choice *not* to encase the muzzle brake, which – to use ATF's words – is "open at the sides and/or the top to allow the gases to escape."[4]

_____

[4] Consumers wishing to buy or make an actual silencer may lawfully do so following the registration procedures under the NFA, 26 U.S.C. §§ 5812, 5822.  That would be the case regardless of the silencer design, including whether it uses a muzzle brake of some type as one of its parts.  Obviously, such persons would not go through that process just to obtain a muzzle brake.  Sig's marketing of complete silencers using the muzzle brake as one part (see ATF Mem.

ATF adds in a footnote to the above: "As Sig points out, some muzzle brakes may be encased. AR 867." ATF Mem. 18 n.5.  Actually, *any* muzzle brake may be encased – one simply needs to slide a cover, which could be a rubber radiator hose, over it to do so, and that converts it into a silencer.  See Sig Mem. 9.  ATF continues that "this is precisely why FTB does not require a particular characteristic in order to make a classification because there is no one characteristic that makes an item a silencer. In addition, ATF has acknowledged that conventional muzzle brakes may become silencers with the addition of parts. AR 818." ATF Mem. 18 n.5.  ATF thereby confirms that the Sig device is no different than other muzzle brakes.

### C. ATF Concedes that Sig Sauer's Muzzle Brake Increases Sound and Requires Other Parts to Reduce the Report of a Firearm, But Ignores That Such Facts Do Not Meet the Statute's Definition of a Silencer

The above is further borne out by the sound tests that both ATF and Sig Sauer conducted on various muzzle brakes.  ATF does not contest that the Sig device increases rather than decreases noise.  ATF tested that device and 8 other muzzle brakes.  ATF Mem. 11.  While baffles, including those in muzzle brakes, may redirect muzzle blast in multiple directions, and the volume of noise may vary depending on where the microphone is placed, ATF flatly admits that "the Sig submission increased sound" without any reservation.  *Id*. at 12.  While ATF fails to acknowledge it in its brief, the tests conducted both by ATF and by Sig Sauer confirmed that covering up other muzzle brakes with a radiator hose or other cover creates an effective silencer. Sig Mem. 9.

The rifle at issue was designed with a rifled barrel of 6.5" rather than a longer rifled barrel to avoid high pressures, and the muzzle brake was designed to extend the barrel length by

_____

23), which would be in compliance with the NFA, does not imply that the product is intended *only* for such use.

9.5", so that the overall barrel length would be at least 16".  See Sig Mem. 6.  "ATF agrees that it has taken the position that a muzzle device counts as part of the barrel length."  ATF Mem. 19. Having a barrel at least 16" long would allow the rifle to be sold without special restrictions applicable to a rifle with a barrel under 16", which would otherwise make it unmarketable.[5]

The above demonstrates that the muzzle brake is intended for use as such (i.e., to reduce muzzle rise and recoil) on a rifle with a barrel over 16" in length, precluding its classification as a "part intended only for use" in assembly of a silencer.  ATF simply avoids the issue in responding that "the fact that the plaintiff designed the submission to avoid classification as a short barreled rifle under the NFA, AR at 873, does not mean it is immune from the NFA in all other respects." ATF Mem. 19.  Sig Sauer's design to avoid classification as a short-barreled rifle demonstrates that the device cannot be "intended *only* for use" in a silencer.  It goes without saying that muzzle-brake length is not on ATF's list of possible silencer features, which includes items like washers and steel wool.  See ATF Mem. 16.

Ignoring the intended uses of the muzzle brake, ATF calls it "a conventional silencer core," asserting that "the incidental effect of reducing recoil does not change the classification to a muzzle brake where the design characteristics show it to be a silencer."  ATF Mem. 21.  While the term "design" does not appear in the definition of silencer pertinent here, the design of the device is fully consistent with its intended use as a muzzle brake in a rifle with a barrel over 16" which fires without unsafe pressures.  To call reduction of recoil and muzzle rise, avoidance of legal restrictions on barrel length, and a mechanism that fires safely "incidental effects" is simply to ignore the facts in the record.

---

[5] The restrictions would require that an owner get permission from ATF just to cross state lines with the rifle, 18 U.S.C. § 922(a)(4), and register it under the NFA, 26 U.S.C. §§ 5812, 5822.

If anything, the ability to convert a muzzle brake, with the addition of other parts, into a silencer is an "incidental effect" of having a muzzle brake.  There is no evidence in the record that the consumers to whom Sig Sauer would market the product would generally purchase it with the intent of obtaining other parts and assembling or fabricating a silencer.  ATF states that the term "intended" must mean "something more than a figment of one's imagination."  ATF Mem. 21, quoting the *Firearms Law Deskbook* (AR 290). ATF's speculation that the product here is "intended only for use" in a silencer is a figment of its own imagination.

ATF argues that "the fact that the Sig submission may be purchased separately from the outer tube and end cap, does not mean it is not one of 'parts . . . intended for use in assembling . . . a firearm silencer.'" ATF Mem. 23.  That confuses what a person "may" do with what the person *intends* to do.  That a person "may" use a gun to commit a crime in no way implies that the person intends to do so.  Moreover, that statement deletes the word "only" from the definition here – to be a silencer, a part must be "intended *only* for use" as such.  ATF adds: "Plaintiff does not dispute, that when combined with the outer tube, their submission is in fact appropriately classified as a silencer."  *Id*.  Indeed not.  And that is the case with any other muzzle brake when combined with an outer tube.

### D. ATF's Attempt to Derive Significance from the Labeling and Handguard Length of Sig Sauer's Prototypes, Submitted for Agency Review, Is Baseless

Reflecting ATF's 2013 classification of the item as a silencer and its directive to register it as such, AR 791, Sig Sauer listed the item as a "silencer" and used a part number as such on a packing slip sent to ATF with product samples for evaluation during the remand.  ATF suggests that this is somehow an acknowledgment that its classification is correct.  ATF Mem. 19-20.  It is not, and it will change if this Court rules otherwise.  Steven Shawver Declaration (SS Dec.), ¶ 27, AR 878.

The handguard on the first prototype rifle sample Sig Sauer sent to ATF, in April 2013, was longer than would be appropriate because a shorter handguard was unavailable at the time. The second sample, sent to ATF in June 2014, had the correct, shorter handguard that extends no further than the muzzle of the barrel, and it would be used for commercial production.  EL Dec., ¶s 39-41, AR 869-70.  ATF has no basis for suggesting that the initial use of the longer handguard somehow shows an intent to have a cover over the muzzle brake, when the shorter handguard is the one that would be used.  ATF Mem. 20.

ATF concludes that "the defendant's action in classifying Sig Sauer's submission as a monolithic baffle stack was not arbitrary and capricious."  ATF Mem. 24.  That reflects ATF's attempt to rewrite the statute to delete its intent requirement and to reduce it to a simple checklist of technical words selected by the agency for ease of administration.  On the basis of the factual record, Sig Sauer has established that the device is intended for use in a rifle as a muzzle brake to reduce recoil and muzzle rise in a configuration with a barrel at least 16" in length and in a design that operates with safe pressures.

## II.  ATF IGNORES THE INTENT REQUIREMENTS SET FORTH IN *U.S. v. CROOKER* (1ST CIR. 2010), WHICH IS DISPOSITIVE HERE

ATF ends its discussion of judicial opinions where it should have begun, barely mentioning the precedent that most clearly applies here – *United States v. Crooker*, 608 F.3d 94 (1st Cir. 2010).  ATF disputes that *Crooker* "rejected an 'objective test,'" and depicts *Crooker* as only "caution[ing] that intent is relevant to ensure the silencer definition is not applied too broadly."  ATF Mem. 16, citing *Crooker*, 608 F.3d at 97-98. "ATF is not disputing that the manufacturer's stated intent is relevant – only that it is determinative."  *Id*.  Other than those generalities, ATF completely disregards the First Circuit's definitive analysis.

*Crooker* involved a complete silencer that fit an airgun, which is not a "firearm"; ATF made it fit a firearm by use of a simple adapter.  608 F.3d at 96.  Section 921(a)(24)'s definition of a device "for" silencing a firearm "does not refer either to capability or adaptation," and instead refers to "purpose."  *Id*. at 97.  The further definitions referring to a combination of parts "intended for use" and a part "intended only for use" embodied "gradations of purpose made more rigorous as the statute extends from a self-sufficient device to a collection of parts to a single part."  *Id*.

*Crooker* explicitly rejected an objective, no-intent test identical to what ATF argues here. It did not suffice that "Crooker's device fitted with an adapter would be objectively capable of functioning as a silencer for a firearm," *id*. at 97, just as it does not suffice here that the muzzle brake could be fitted with a cover and end cap.

Comparing the definitions of "silencer" and "machinegun," *Crooker* explained: "But the machine-gun provision, by contrast to the silencer definition, explicitly adopts a test of objective capability: it covers any weapon '*which shoots*, is designed to shoot, or *can be readily restored to shoot*' automatically multiple shots with a single trigger pull."  *Id*. at 98, quoting 26 U.S.C. § 5845(b) (emphasis added by court).  As the Court added: "Nor is the difference in language difficult to explain: something is or is not an automatic weapon, but the range of physical objects that can muffle a firearm is so large and of so many alternative uses that some filtering restriction is needed to prevent overbreadth and possibly vagueness."  *Id*.[6]

---

[6] *Id*. ("a potato or a soda bottle may . . . be used to muffle a firearm shot"). Crooker's Reply Brief, 2009 WL 6841493, *19, cited cases in which a potato, pillow, motorcycle muffler, and a plastic bottle were used as silencers.  *E.g*., *United States v. Williams*, 547 F.3d 1187, 1194 (9th Cir. 2008) (potato).  A potato can be used as a silencer simply by hollowing out one end, inserting the gun barrel into the hole, and firing.  *Dorch v. Smith*, 2002 WL 32598987, *1-*3 (E.D. Mich. 2002)

*Crooker* approvingly cited cases holding that "intent or purpose is an element of the initial silencer definition . . . as it plainly is for the parts definitions . . . ." *Id*. at 98-99 & n.3, citing, *inter alia*, *United States v. Carter*, 465 F.3d 658, 667 (6th Cir. 2006) (*per curiam*) (the silencer provision "focuses on the intended *application* of a silencer, not its actual demonstrated operation" and "indicates a concern for the *purpose* of the mechanism . . . not the *function*") (emphasis in original), *cert. denied*, 550 U.S. 964 (2007).[7]

None of the other cases cited by ATF support its position.  String citing cases about avoiding absurd results, ATF argues: "Plaintiff's argument would lead to an absurd result – the removal of silencer parts from the NFA based solely on the maker's stated intent."  ATF Mem. 14.  Sig Sauer relies on unrebutted facts in the record, not just "stated intent."  Moreover, a part is not a "silencer part" if it is not "intended *only* for use" in a silencer.[8]

ATF depicts Sig Sauer's argument as stating that a manufacturer need only claim that a device is intended as a muzzle brake, and that label would free a silencer part from regulation.  ATF Mem. 13.  No such argument has been made.  Sig Sauer's intent is established by the factual record demonstrating that the device is an effective muzzle brake and that its dimensions serve the purposes of having a 16" barrel and an action that fires without high pressures.  If a part really is "intended only for use" in a silencer, the mere allegation by a manufacturer that it is not, without factual support, would not be determinative.

No basis exists for ATF's further argument that, if the statutory text is read literally, "no part will ever be a silencer . . . ."  ATF Mem. 14.  Nothing in the record, which includes no

---

[7] See also *United States v. Klebig*, 600 F.3d 700, 703-04 (7th Cir. 2010) (focusing on whether defendant "intended to use the oil filter . . . as a silencer rather than as a flash suppressor").

[8] That the firearms industry is "pervasively regulated," ATF Mem. 14, says nothing about a firearm classification.  *See United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 517-18 (1992) (rejecting dissenting opinion making that argument, *id*. at 526 (Stevens, J., dissenting)).

information about criminal prosecutions, suggests that, and the precedents are to the contrary.[9]

*United States v. Syverson*, 90 F.3d 227, 232 (7th Cir. 1996), recognized that the manufacturer's intent determined whether a metal cylinder was a muzzle brake or a silencer, but found that the manufacturer "intended the cylinder to be a silencer" instead of a muzzle brake because its design "would not have done much, if anything, to reduce the recoil of a firearm," but it "did reduce the report of a pistol . . . ."  See ATF Mem. 15-16 (quoting *Syverson*, 90 F.3d at 232, as noting that "there was evidence showing that he intended the cylinder to be a silencer.").

*Innovator Enterprises, Inc. v. Jones*, Civil No. 13–581, 2014 WL 1045975 (D.D.C. Mar. 19, 2014), analyzed in great detail why ATF's classification of a purported muzzle brake as a silencer was arbitrary and capricious, rejecting some of the same arguments that ATF makes in this case.  For instance, ATF claimed that the device was a silencer based on it having three of eight characteristics from a list, disregarding intent and design features that made it an effective muzzle brake.  *Id.* at *2, *6-7.  See further Sig Mem. 17-18.  Here, ATF is completely silent on the merits of the *Innovator* decision, which it mentions only in reference to the deference issue. ATF Mem. 8.

---

[9] Conviction under an indictment charging "unregistered silencers and silencer parts" was upheld because the defendant "knew and intended for the items found in his shop to be silencers or silencer parts."  *United States v. Taylor*, 100 Fed. Appx. 305, 307-08 & n.1 (5th Cir. 2004). *See id.* at 107 ("one was a piece of plastic tubing wrapped in black tape with a rubber cap on the end, another was a metal cylindrical object with rubber insulation inside of it, and yet another was a rubber tube with threads inside it and an end cap"). *See also United States v. Rose*, 522 F.3d 710, 720 (6th Cir. 2008) (since "[t]he statutory definition itself encompasses parts intended for use in fabricating silencers," "a dummy silencer" would be included if the person "planned to convert [it] into a silencer"); *United States v. Anderson*, 853 F.2d 313, 321 (5th Cir. 1988) (defendant "knowingly possessed the rear portion of a silencer" and "knew that this item was at the very least a portion of a silencer"); *United States v. Krug*, 20 Fed. Appx. 271, 274 (6th Cir. 2001) (a "black hose device"); *United States v. Webb*, 49 F.3d 636, 639 (10th Cir. 1995) ("The silencers … were made of '[o]ld toilet paper tubes and stuffing from some old stuffed animals.'"); *United States v. Wershe*, No. 88-1666, 1990 WL 177203, *1, 918 F.2d 179 (6th Cir. 1990) *(per curiam)* ("silencer components").

ATF avoids discussion of the precedents on this very statute and instead relies on decisions interpreting statutes worded completely differently from the one at issue. ATF Mem. 14-15. ATF cites *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 519 (1994), which held that the definition of "drug paraphernalia" in Title 21 of the United States Code as an item "primarily intended . . . for use" with illegal drugs "refers to a product's likely use rather than to the defendant's state of mind." If the definition in 18 U.S.C. § 921(a)(24) included language that the device be one "primarily intended for" muffling or silencing the report of a portable firearm, this case might be relevant. What is at issue is whether the muzzle device is "any part intended only for use" in assembling or fabricating a silencer. The differences in the statutory definitions are profound, making ATF's citation of this case irrelevant.

Moreover, the statute at issue in *Posters 'N' Things* listed a number of actual items as included in the statutory term (e.g., bongs) and excluded items "traditionally intended" for use with tobacco, all of which designated objective criteria. *Id*. at 519-20. While no such factors exist in the statute here, Sig Sauer has demonstrated with objective evidence how and why the device is not "intended only for use" in a silencer.

ATF also cites *United States v. Focht*, 882 F.2d 55, 60 (3d Cir. 1989), in which the court found that certain components were "intended to produce" illegal fireworks banned by the Federal Hazardous Substances Act. The statute defined the term "banned hazardous substance" to include any hazardous substance intended for use in the household which "the Secretary by regulation classifies as a 'banned hazardous substance'" on the basis of a finding that the degree or nature of the hazard involved requires keeping the product out of the channels of interstate commerce. *Id*. at 58. The statute specifically required exemption of "common fireworks" from the definition. *Id*. Regulations implementing the definition of "banned hazardous substance"

specifically banned aerial fireworks, including kits and components "intended to produce" such fireworks, and fireworks exploding on the ground, including kits and components "intended to produce" such fireworks.  *Id*.

In *Focht*, the Consumer Products Safety Commission sought a preliminary injunction against a company's sale of kits and components for hazardous substances, which the company claimed were for Class C fireworks.  The district court found that the "components intended to produce" language in the regulations required consideration of the seller's subjective intent and denied the injunction.  *Id*. at 56-57.  The court of appeals reversed, finding that the regulations clearly contemplate an objective seller standard.  The court based this conclusion, in part, on the extreme hazards presented by the entry of illegal fireworks into commerce.   The court also based this conclusion on evidence that "90% of those individuals who order" the fireworks components "will use these items to make illegal fireworks."  *Id*. at 60.  "Such usage necessarily contemplates the manufacturer's intent in producing the firework or the seller's intent in marketing it."  *Id*. at 59.[10]

ATF's reliance on *Focht* is misplaced, as the court construed statutory and regulatory language very different from the definition in 18 U.S.C. § 921(a)(24).  The Secretary had "broad regulatory powers" authorizing it "to make determinations and then ban any substance that cannot be made safe through labeling."  *Id*. at 58.  By contrast, ATF has no authority to expand on the definition of silencer, which is part of the criminal code.

---

[10] The court added that "the objective intent standard does not result in a total ban of sales of the goods in question," as the company "may avoid violation by policing the orders it receives and refusing to fill those that suggest the components will be put to banned uses."  *Id*. at 60.  One way would be "to check recent orders by the same customer" to avoid "ship[ping] to homes all the components of illegal fireworks . . . ."  *Id*. at 60-61.

Moreover, it is apparent that the Third Circuit in *Focht* was concerned about the public safety hazards presented by the sale to consumers of components to assemble dangerous fireworks.  No such hazards are presented by the sale of the device at issue, irrespective of its classification by ATF.  In addition, there is no evidence in the record that consumers intend to obtain the muzzle device for use in assembling a firearm silencer.[11]

*United States v. Thompson/Center Arms Co.*, 504 U.S. 505 (1992), held that parts with multiple potential uses, including uses in both NFA and non-NFA firearms, are not thereby designed and intended for NFA uses, and it did so without the term "only" being in the relevant definition.  See Sig Mem. 21-22.  ATF avoids any analysis of that holding and turns to the irrelevant subject of whether NFA firearms defined as combinations of parts must be readily capable of assembly.  ATF Mem. 23.[12]

In sum, the First Circuit opinion in *Crooker* is dispositive of this case; the other precedents on silencers buttress that opinion as applied to the issue here; and *Thompson/Center Arms* counsels against expansive construction of the statutory definitions.  The non-germane decisions cited by ATF do nothing to support its position here.

---

[11] *See Western States Import Co., Inc. v. United States*, 154 F.3d 1380, 1383 (Fed. Cir. 1998) (comment reflecting "little probative value to what importers themselves call what they import" made in context of language that an item is "not designed for use" in a certain manner, *id*. at 1381).

[12] ATF makes the further non-sequitur argument that § 921(a)(24) does not require "that the parts be in 'close proximity' as Plaintiff suggests. AR at 800."  ATF Mem. 22-23.  Plaintiff did not say that in the cited reference, and instead noted that *Thompson/Center* recognized that "an NFA firearm is made if parts are in close proximity" and they serve no useful purpose other than to make an NFA firearm or to convert a weapon into one.  AR 800.  *Thompson/Center* referred to a gun being "placed together" with other parts, *id*. at 511-12, to the "aggregation of parts" that could be assembled both as an NFA firearm and a non-NFA firearm, and to "the packaging of pistol and kit." *Id*. at 512-13.

### III.  WITHOUT JUSTIFYING THE NEED TO RELY ON LEGISLATIVE HISTORY, ATF RELIES ON THE WRONG LEGISLATIVE HISTORY

While the language of the statute is clear and thus resort to legislative history is unwarranted, ATF nonetheless relies on legislative snippets which do nothing to support its interpretation.  ATF Mem. 3-4, 14, 23.  *See United States v. Roberson*, 752 F.3d 517, 523 n.6 (1st Cir. 2014) ("Nor, if we were free to consult legislative history despite the plain language of the statute, has [appellant] identified any history that lends support to his interpretation.").

Two years before the Firearm Owners' Protection Act of 1986 (FOPA) enacted the definition of silencer, a House subcommittee held hearings that focused on armor-piercing ammunition.  Brief mention was made of how a complete silencer parts kit could be obtained from two sellers.  An ATF witness stated that one source would supply "two pieces of aluminum tubing" and another would supply "eyelets, tubes of aluminum and a small container," and the parts could be assembled into a sound suppressor.[13]  Armor Piercing Ammunition & the Criminal Misuse of & Availability of Machineguns & Silencers: Hearings on H.R. 641 & Related Bills, Subcommittee on Crime of the Committee on the Judiciary, House of Rep., 98th Congress, 1st Sess. 132 (1984).  A police chief testified that silencer parts could be purchased from three different vendors.  *Id*. at 156.

Based on the above bare-bones testimony, ATF asserts: "As a result, Congress amended the definition to include the 'combination of parts' and 'any part' language."  ATF Mem. 4.  No one in Congress, whether in debate or a report, even mentioned this subcommittee testimony.

---

[13] This description of parts, which appear to be common household items, suggests why Congress would include intent requirements in the definition of silencer.  Without meeting the statutory intent requirement, the Sig muzzle brake is no more a part of a silencer kit than is aluminum tubing.  In the example discussed in the above hearing, both seller and buyer clearly intended that the parts be used to assemble a silencer.

Moreover, it sheds no light on the language at issue of "any part intended only for use" in making a silencer.

ATF further relies on language that did not pass in a bill that did not pass: "The definition of silencer is amended to include any part designed or redesigned and intended to be used as a silencer for a firearm. This will help control the sale of incomplete silencer kits that now circumvent the prohibition on selling complete kits."  H.R. Rep. No. 99-495, To Accompany H.R. 4332, 99th Cong., 2d Sess., 21 (1986), 1986 WL 31888, quoted in ATF Mem. 23.  As reported, that version (H.R. 4332) referred to any device for silencing a firearm and "any part or combination of parts designed or redesigned and intended for such use with a firearm."  132 Cong. Rec. H1672 (1986).  The word "only" was absent from that definition.  *Crooker* found H.R. Rep. No. 99-495 not to be helpful.  608 F.3d at 98.

By contrast, the FOPA bill – the Volkmer substitute, H.R. 945 – proposed the language that would actually pass, which separated "any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler" – which would apply to silencer kits – from "any part intended only for use in such assembly or fabrication." *Id*. at H1675, H1700.  H.R. 4332, with its broader definition that did not include the word "only," would be "laid on the table" when the Volkmer substitute passed, which then became "H.R. 4332, as passed by the House."  *Id*. at H1753, 1757.

Asked whether muzzle attachments not "designed or altered to be silencers, even though these devices may quash sound," are silencers, Rep. Volkmer explained that "conventional" muzzle brakes and other attachments "are not 'devices for silencing'" because they have purposes "apart from muffling sound."  *Id*. at H1757.  ATF implies that this only applies to what it calls "conventional" muzzle brakes, ATF Mem. 21, but the definition of silencer includes no

such distinction, and nothing in Volkmer's remarks (or the statutory language) suggests that designs are frozen in time.

ATF's reliance on a broader definition that did not pass reflects its failure to come to terms with the plain text that did pass. "Only" means *only*. The device here, like other muzzle brakes, with the addition of other parts can be converted into a silencer, but it is certainly not "intended only for such use."

## IV.  ATF'S OPINION OF THE APPLICABILITY OF THE CRIMINAL PROVISIONS AT ISSUE IS NOT ENTITLED TO DEFERENCE

No deference is due to ATF's opinion that the device is a silencer. The meaning of "any part intended only for use" in a silencer is clear. The definition arises in the context of criminal statutes with severe penalties for violation.[14]  Deference is not accorded to agency opinions regarding the applicability of criminal statutes, including when the issue arises in a civil case. See Sig Mem. 18-23.

This action was brought under both the Administrative Procedure Act (APA) and the Declaratory Judgment Act. ATF argues as if the APA is the only basis for the action and sets forth a simplistic view under the APA of its alleged entitlement to deference. But the Declaratory Judgment Act is a particularly important vehicle in which a party may ensure that it is acting in compliance with a criminal law, without potentially violating it.[15]  Under neither act is deference given to agencies in interpretation of criminal laws.

---

[14] *See* 18 U.S.C. § 924(a); 26 U.S.C. § 5861.

[15] In the words of the principal author of the Act: "Into this dilemma no civilized legal system operating under a constitution should force any person. The court, in effect, by refusing an injunction informs the prospective victim that the only way to determine whether the suspect is a mushroom or a toadstool, is to eat it."  *Steffel v. Thompson*, 415 U.S. 452, 468 n.18 (1974) (citation omitted).

In the classic case of *FCC v. American Broadcasting Co.*, 347 U.S. 284, 289 n.4 (1954), APA challenges were mounted against agency regulations that were alleged to be beyond the agency's power.  Given that "it is a criminal statute that we must interpret," there "cannot be one construction for the [agency] and another for the Department of Justice," so if "the broad construction urged by the [agency]" is adopted, "the same construction would likewise apply in criminal cases." *Id*. at 296.

*Thompson/Center Arms*, 504 U.S. at 517-18, applied the same rule to refuse deference to ATF's firearm classifications and to construe the statute narrowly because it was criminal, even though the case arose in a civil context.  That principle as applied here means that if the device at issue would not be considered a silencer in a criminal prosecution applying the First Circuit's ruling in *Crooker*, 608 F.3d 94, it cannot be considered a silencer in this case.

Even ignoring that a criminal statute is at stake, given that the meaning of the statute is clear, deference would not in any case be due under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc*., 467 U.S. 837 (1984).  "First, we look to the statute to ascertain whether 'Congress has directly spoken to the precise question at issue.' . . . If the statute is clear in its meaning, we must 'give effect to the unambiguously expressed intent of Congress.'"  *Santana v. Holder*, 731 F.3d 50, 55 (1st Cir. 2013), quoting *Chevron*, 467 U.S. at 842-43.

It is only "[i]f, *after* applying these interpretive rules, we conclude that the statute is ambiguous," would a court move to *Chevron*'s second step, in which "the inquiry focuses on 'whether the agency's answer is based on a permissible construction of the statute.'" *Id*. at 55, quoting in part *Chevron*, 467 U.S. at 843.  But if it is a criminal statute and it is ambiguous, the

rule of lenity, not deference, would apply. *Thompson/Center Arms*, 504 U.S. at 517-18.[16]  If no

ambiguity exists and the rule of lenity does not apply, see ATF Mem. 10, no claim to deference

applies either.

 In arguing for deference under the APA, ATF cites cases on civil laws without criminal

implications.  ATF Mem. 5.  *River Street Donuts, LLC v. Napolitano*, 558 F.3d 111, 112 (1st Cir.

2009), concerned the formula for determining that a donut shop did not have the financial ability

to employ a foreign worker for immigration purposes.  Unlike here, the plaintiff "does not

contend that the [agency] acted outside the scope of authority delegated to it by statute . . . ."  *Id.*

at 117.  *City of Pittsfield, Mass. v. EPA*, 614 F.3d 7, 10-11 (1st Cir. 2010), concerned whether a

petition to review a permit for a wastewater treatment plant was procedurally sufficient.[17]

 Even the cited cases involving ATF largely involved civil provisions with no criminal

implications.  ATF Mem. 5-6, 8-9.  Five of the cases involved Congress' delegation to ATF of

deciding whether firearms are suitable for sporting purposes for purposes of importation.  18

U.S.C. § 925(d)(3).  The only consequence of an adverse decision is the denial of an import

permit, not a trip to the penitentiary.  *E.g.*, *Gilbert Equipment Co., Inc. v. Higgins*, 709 F. Supp.

---

[16] Rejecting the argument that the rule does not apply in a civil setting, the Court explained: "The rule of lenity . . . is a rule of statutory construction whose purpose is to help give authoritative meaning to statutory language. It is not a rule of administration calling for courts to refrain in criminal cases from applying statutory language that would have been held to apply if challenged in civil litigation." *Id.* at 519 n.10.

[17] Nor is *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), which involved entitlement to overtime pay, relevant to a case in which a criminal statute is applied in a civil setting.  ATF states that if "the relatively informal nature of ATF's classification in this case deprives it of *Chevron* deference, ATF is still entitled to *Skidmore* deference to the extent this classification has the 'power to persuade.'" ATF Mem. 9.  But as *Skidmore* states, it is for the courts "to find facts and to determine in the first instance whether particular cases fall within or without the Act," *id.* at 137, and an agency's persuasive power depends in part on "the thoroughness" of its consideration and "the validity of its reasoning . . . ."  *Id.* at 140.

1071, 1077 (S.D. Ala. 1989),[18] *aff'd*, 894 F.2d 412 (11th Cir. 1990) (denial of import permit for shotgun).[19]

As noted, ATF barely mentions the recent decision finding ATF's classification of a muzzle device as a silencer to be arbitrary and capricious.  ATF Mem. 8, citing *Innovator Enterprises, Inc. v. Jones*, Civil No. 13–581, 2014 WL 1045975 (D.D.C. Mar. 19, 2014).  The court in that case did so without even invoking the rule of narrow interpretation of criminal statutes when they arise in civil litigation.  In an understatement, ATF characterizes *Innovator* as holding that "ATF was not entitled to the full level of deference under *Chevron*," ATF Mem. 8, when the court flatly found that ATF's classification "does not qualify for *Chevron* deference," period.  2014 WL 1045975, *3, citing *Chevron*, 467 U.S. at 842-43.  Other than its single oblique mention of *Innovator* in the context of deference, ATF fails to engage the merits of that decision at all.

ATF discusses one case that implicated a criminal provision of the Gun Control Act, although the court made no mention of the interpretative red flag that it should have raised.  ATF Mem. 8, citing *York v. Higgins*, 774 F.2d 417, 419-420 (10th Cir. 1985).  The court found a formal ATF ruling's interpretation of the statutory meaning of a machinegun to be "merely an interpretative rule" that "is not granted the 'force of law' of legislative rules," while its

---

[18] Cited as authority in *Conservation Law Foundation v. Federal Highway Admin.*, 630 F. Supp.2d 183, 201 (D.N.H. 2007), for the proposition that in APA review the court "determine[s] the legal question of whether the agency's action was arbitrary and capricious."  See ATF Mem. 6.  This was a civil case on the environmental impact of adding lanes to a highway.

[19] *See also Gun South, Inc. v. Brady*, 877 F.2d 858 (11th Cir. 1989) (temporary suspension of rifle import permit) (*but see id.* at 869 (Hoffman, J., dissenting)), *rev'g* 711 F. Supp. 1054 (N.D. Ala. 1989); *Springfield, Inc. v. Buckles*, 116 F. Supp. 2d 85, 89 (D.D.C. 2000), *aff'd*, 292 F.3d 813 (D.C. Cir. 2002) (denial of rifle import permit); *Firearms Import/Export Roundtable Trade Group v. Jones*, 854 F. Supp.2d 1 (D.D.C. 2012), *aff'd*, 498 F. App'x 50 (D.C. Cir. 2013) (denial of barrel import); *Mullenix v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 5:07-CV-154, 2008 WL 2620175, at *5 (E.D.N.C. July 2, 2008) (denial of rifle import permit).

application to the facts of that case "was not a rulemaking of any stripe," but was "adjudication, albeit informal." *Id*. at 419-20.  The court held the item to be a machinegun based not on deference, but on the facts and the clear terms of the statute.  See *id*. at 420 ("York has never offered any evidence contradicting these points beyond his own vehement insistence.").

ATF further relies on a case involving the meaning of an antique firearm in the Gun Control Act.  ATF Mem. 6-7, citing *Modern Muzzleloading, Inc. v. Magaw*, 18 F. Supp.2d 29 (D.D.C. 1998).  Although the court gave deference to ATF, it based its decision on an analysis of the language of the statute and the factual record.  *Id*. at 36-37.[20]

ATF asks whether ATF classifications should be accorded *Chevron* deference, but notes that "[a]pplying '*Chevron* deference' means 'legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.'" ATF Mem. 7-8 & n.1, quoting *Chevron*, 467 U.S. at 844.  No legislative regulation, but just an opinion of the application of the plain statutory phrase "intended only for use" to a given product, is involved here.  *See United States v. Mead Corp*., 533 U.S. 218, 221 (2001) ("a tariff classification has no claim to judicial deference under *Chevron*"); *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters . . . do not warrant *Chevron*-style deference.").

**CONCLUSION**

This Court should deny Defendant's Motion for Summary Judgment.  ATF has failed to demonstrate that the device at issue is a "part intended *only* for use" in making a silencer under 18 U.S.C. § 921(a)(24).  The factual record shows that the device is an effective muzzle brake

---

[20] *York* and *Modern Muzzleloading* were said to be "inconsistent on the question of whether ATF firearm classifications enjoy full *Chevron* deference."  ATF Mem. 7-8, quoting *United States v. One TRW, Model M14, 7.62 Caliber Rifle*, 294 F. Supp. 2d 896, 900 (E.D. Ky. 2003).  But that court also resolved the case based on the statute and the record.  *Id*. at 901-02.

that reduces recoil and muzzle rise, and that it is essential to the design of the rifle so it will have a barrel at least 16" long that fires without excessive pressure.

*United States v. Crooker*, 608 F.3d 94 (1st Cir. 2010), emphasized the element of intent and rejected the capability test argued by ATF here.  ATF avoids a careful analysis of this clearly-applicable First Circuit precedent, which is dispositive.  The legislative history cited by ATF does not apply to the statute as adopted.  The deference to which ATF appeals is inapplicable here.

In short, ATF has failed to show that the undisputed material facts support its position. Further, given the clear statutory language and applicable First Circuit precedent, ATF failed to show that it is entitled to judgment as a matter of law.

<div style="margin-left: 40%">

Respectfully submitted,

Sig Sauer, Inc.
By counsel

</div>

Date:  February 9, 2015

<div style="margin-left: 40%">

/s/ Stephen P. Halbrook
Stephen P. Halbrook, *Pro Hac Vice*
Suite 403
3925 Chain Bridge Road
Fairfax, VA 22030
(703) 352-7276
(703) 359-0938 (fax)
protell@aol.com

/s/ Mark C. Rouvalis
Mark C. Rouvalis, NH Bar No. 6565
Kenton J. Villano, NH Bar No. 21220
City Hall Plaza
900 Elm Street
Manchester, N.H. 03101
(603) 628-1329
(603) 625-5650 (fax)
mark.rouvalis@mclane.com
kenton.villano@mclane.com

Counsel for Sig Sauer, Inc.

</div>

24

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document was filed by the ECF system and served on all counsel of record electronically as a result thereof on the 9th day of February, 2015.

<div align="right">

<u>/s/ Mark C. Rouvalis</u>
Mark C. Rouvalis

</div>