IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| SIG SAUER, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:14-cv-00147-PB |
| ) | |
| B. TODD JONES, Director, Bureau of ) | |
| Alcohol, Tobacco, Firearms and Explosives, ) | |
| ) | |
| Defendant. ) | |

DEFENDANT'S MEMORANDUM IN OBJECTION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

I.   INTRODUCTION.

The parties filed cross-motions for summary judgment on January 9, 2015.  See DNs 18, 19.  Most of Plaintiff's arguments were anticipated and addressed in Defendant's Motion for Summary Judgment, and are not reiterated at this time.  However, the defendant, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), adds the following brief comments in response to Sig Sauer's motion.

Sig Sauer suggests that the ATF's classification decision is so "expansive and erroneous," DN 19-1 at 1, and so arbitrary and capricious that it would allow a lawn mower muffler to be classified as a silencer subject to the National Firearms Act (NFA), 26 U.S.C. Ch. 53,  and the Gun Control Act (GCA) as amended, 18 U.S.C. Ch. 44.  The plaintiff did not submit a lawn mower muffler for classification to ATF, it submitted a monolithic baffle core - which is widely recognized as the core component of many silencers - which it simply labelled as a muzzle brake.  Rather, what is "expansive and erroneous" is the plaintiff's theory that no item may ever be classified as a silencer so long as the manufacturer calls it by another name or for

which it simply claims a dual purpose.  Taken to its logical conclusion, the fact that the plaintiff, as well as presumably all other manufacturers, purposefully seek to avoid the "burdensome restrictions" and "red tape," DN 19-1 at 1, 6, of the NFA and the GCA would take their item out of the silencer part definition simply because it serves a dual purpose.  While ATF does allow an attached device to be considered in determining whether the overall length of a barrel exempts that firearm from the requirements of the NFA, that does not render the attached device automatically NFA-exempt for all other purposes.  Plaintiff claims it "chose to design the barrel by combining a 6.5" barrel with a rifled bore and a muzzle brake to extend the barrel to 16", rather than simply using a 16" barrel with a rifled bore, in part because testing revealed that use of a barrel with a rifled bore over about 8'' created dangerous pressures in the operating mechanism."  DN 19-2 at 6.  However, the reason for this is simple.  The plaintiff's MPX rifle was designed for the military and law enforcement[1] and used a short barrel because it was specifically designed with a silencer and because an overall short barrel serves a unique law enforcement purpose.  AR 722, 756, 765, 769.  A short barrel and silencer combination results in reduced pressure.  When the plaintiff decided to make a civilian version from this design, they added a 16-inch barrel and found out that their design worked best as originally designed—with a short barrel.  Therefore, they attached the monolithic baffle stack and, knowing it was a basic silencer part, argued that it was a "muzzle brake" to make it available to the civilian market without NFA regulation.  See AR 715 (The "carbine variant of the SIG MPX features a decidedly ugly, permanent muzzle brake.  Many Sig fans have lamented this as being a wasted opportunity for a longer, more accurate barrel.  But Sig is having the last laugh.  That muzzle

---

[1] Transfers to Federal law enforcement and the military are exempt from the NFA's registration requirements, see 26 U.S.C. § 5841(a), and transfers to law enforcement are exempt from the NFA's taxation requirements, see 26 U.S.C. § 5853.

brake is far more important than just a way to keep the weapon civvie-legal … it doubles as the baffle system for an integral suppressor.")

In response to the plaintiff's Motion for Summary Judgment and in support of the Defendant's Motion for Summary Judgment, classifying the plaintiff's submission as a silencer part pursuant to 18 U.S.C. § 921(a)(24) "is supported by a rational basis," River Street Donuts, LLC v. Napolitano, 558 F.3d 111, 114 (1st Cir. 2009) and is thus not arbitrary and capricious under the Administrative Procedure Act. (APA).

II.     INTENT HAS AN OBJECTIVE, AS WELL AS SUBJECTIVE, COMPONENT.

The statutory section at issue defines the term "firearm silencer" to mean

> any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication.

18 U.S.C. § 921(a)(24).  ATF is not arguing that intent is irrelevant; intent—per the statutory language—is relevant.  ATF is simply arguing that a manufacturer's stated intent is not determinative and should not be accepted in a vacuum.  To hold otherwise would render the "any part" definition of section 921(a)(24) meaningless.  See Cahoon v. Shelton, 647 F.3d 18, 22 n.3 (1st Cir. 2011) ("a statute should never be construed in a way that produces an absurd result"); DN 18-1 at 14. This is particularly true where, as here, silencers generally also reduce recoil. See id. at 13; AR 232 ("A suppressor can also measurably reduce muzzle flash and felt recoil."). As such, the incidental reduction of recoil would make almost all silencer components not "*only*" for use in the assembly of a silencer. To avoid what is essentially a nullification of that part of the definition, ATF also looks at the objective design characteristics of an item.  See Posters 'N' Things, Ltd. v. United States, 511 U.S. 513, 521 (1994) ("Finally, an objective

3

construction of the phrase 'primarily intended' is consistent with the natural reading of similar language in definitional provisions of other federal criminal statutes."); United States v. Focht, 882 F.2d 55, 59 (3d Cir. 1989) (rejecting a subjective intent standard because it would "undermine[] the statute's purpose"); see also DN 18-1 at 14-16.

As the plaintiff points out, in United States v. Crooker, 608 F.3d 94, 97 (1st Cir. 2010), the First Circuit stated that it viewed section 921(a)(24)'s "three tests as gradations of purpose made more rigorous as the statute extends from a self-sufficient device to a collection of parts to a single part." But that does not mean that a manufacturer's declared intent for a single part that may well incidentally serve dual functions is necessarily determinative. Again, ATF is not arguing that intent is irrelevant, just that determining intent is not based solely on the claims of a manufacturer. The Crooker opinion does not state otherwise. In United States v. Syverson, 90 F.3d 227 (7th Cir. 1996), the plaintiff claims that "the court stated: 'Because Syverson was the designer and manufacturer of the cylinder, his intentions determine whether it purported to be a silencer.'" DN 19-1 at 16. Syverson claimed the cylinder was a muzzle brake. See id. However, put in the proper context, in the language quoted above the court was actually paraphrasing one of Syverson's arguments, not endorsing it, see 90 F.3d at 232. If the court had endorsed that view, it presumably would not have affirmed Syverson's conviction for possession of a *silencer.* See id. at 232-33.

The stated intent of the plaintiff was in fact considered in this classification, as were other indications of the plaintiff's intent; namely, that the initial submission included a hand guard which would burn the shooter's hand if utilized as a muzzle brake and that the identical item

number was given for two identical items—both labeled as silencers although one is the purported "muzzle brake" at issue.  DN 18-1 at 19, 20.[2]

III.     THE SUBMISSION IS A MONOLITHIC BAFFLE CORE.

The plaintiff cites to legislative history, DN 19-1 at 13, which states that conventional chokes, muzzle brakes, and flash hiders would not fit within the silencer definition. See 132 Cong. Rec. H1757; AR 881.[3]  This is correct, however, the plaintiff neglects to mention that its submission is *not* a *conventional* muzzle brake, but a conventional monolithic baffle core. See DN 18-1 at 17-18 (citing, AR 265-76, 306, 308-09, 679-707, 709, 820-21, 822, 839, 843).  Based on reference materials and a history of silencer classifications, ATF has identified the following external and internal characteristics as silencer features.

- Outer tube or body;[4]
- Ported inner tube(s);
- Expansion chamber(s);
- Baffles or washers;
- Sound dampening materials;
- End caps;
- Endcapsulators;
- Wipes;
- Baffling materials; and
- Bleed holes.

---

[2] The plaintiff's explanation that it was simply complying with ATF's classification rings hollow, DN 19-1 at 9, for the plaintiff has taken great pains to label its submission a muzzle brake in every other context.  See AR 640 (You Tube video at shot show), 790, 796, 859-872, 873-879.

[3] In United States v. Hurd, 642 F.2d 1179, 1181 (9th Cir. 1981), see DN 19-1 at 13 n.6, the court of appeals held that the district court's refusal to give the following jury instruction was proper: "The term silencer does not apply to a device which has a primary function of muffling a flash, improving the aim, or reducing the kick of a discharging firearm but which also has an incidental effect of reducing the noise from such discharge."

[4] Because the inner and outer tubes are identified as characteristics, the form, shape and *length* of those tubes will necessarily be considered.  See DN 19-1 at 7.

DN 18-1 at 16; AR 782-83.  As stated in Defendant's Motion for Summary Judgment at 16-17, because of the nature of silencers and their parts, it is not possible to apply any type of rigid formula (i.e., 5 out of 10 characteristics must be present, etc.) in making classifications.

The Sig submission is a classic monolithic baffle core, which is an internal silencer part "consisting of 'expansion chambers, baffles, angled baffles, holes or slots designed to aid in diverting and capturing hot gases created by the burning of propellant powder.'"  DN 18-1 at 17 (citing, AR 818).  Unlike the submission at issue in Innovator Enterprises, Inc. v. Jones, 28 F. Supp. 3d 14 (D.D.C. 2014), the Sig submission is a part, not an entire device, and, therefore, the section of the definition applicable and the analysis are different.  As explained in Defendant's Motion for Summary Judgment, parts in and of themselves rarely silence a firearm's report, nor does the statute require them to do so.  See DN 18-1 at 11.  In any event, ATF did conduct sound testing.  The Sig submission, like other monolithic baffle cores, did not reduce sound.  See id. at 12.

IV.     THE MONOLITHIC BAFFLE CORE, WHEN COMBINED WITH AN
        OUTER TUBE AND END CAP, ARE SILENCER PARTS.

The plaintiff's monolithic baffle core, when combined with an outer tube and end cap, are also "parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer."  18 U.S.C. § 921(a)(24).  Indeed, the core is threaded for the very purpose of receiving an end cap to be encased by an outer tube.  See AR 715 ("Turns out it was one of SHOT's best kept secrets for a couple of days.  Imminent Threat Solutions has an image of the suppressor can next to the MPX-C barrel…the threading at the end of the muzzle brake is plain as day."), 770-71, 822.  There is no requirement in section 921(a)(24) that the parts be in close proximity to one another at the time of the sale.  Moreover, the legislative history shows a clear intent to regulate

6

parts that were not packaged together, although the plaintiff has in fact marketed them together. See DN 18-1 at 23.

V.  ATF'S CLASSIFICATION IS ENTITLED TO DEFERENCE AND
    THE RULE OF LENITY IS INAPPLICABLE.

Regardless of what level of deference is applied (i.e., Chevron, Skidmore), the standard of review under the APA remains "highly deferential" and "the agency's actions are presumed to be valid." River Street Donuts, 558 F.3d at 114.  ATF "does not bear the burden of convincing the Court that its position is better…it merely need convince the Court that the decision was not arbitrary and capricious." Modern Muzzleloading, Inc. v. Magaw, 18 F. Supp. 2d, 37 (D.D.C. 1998).  Moreover, some level of deference *is* appropriate.  "Generally, the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong." Gilbert Equipment Co. Inc. v. Higgins, 709 F. Supp. 1071, 1075 (S.D. Ala. 1989), aff'd, 894 F.2d 412 (11th Cir. 1990); see also Gun South, Inc. v. Brady, 877 F.2d 858, 864 (11th Cir. 1989) ("We must defer to the Bureau's interpretation of the Gun Control Act and its regulations absent plain error in the Bureau's interpretation.");[5] Hagans v. Commissioner of Social Security, 694 F.3d 287, 305 (3d Cir. 2012 ) (where an agency manages a "complex, nationwide administrative system" and "has developed a massive body of expertise" a "relatively high level of deference is warranted"), cert. denied, 134 S. Ct. 1274 (2014).  ATF is charged with the administration and enforcement of the GCA and NFA, see 28 C.F.R. § 0.130(a)(1), and has considered the statutory language, the plaintiff's arguments, previous classifications and public safety in making its determination.

---

[5] The plaintiff cites to F.J. Vollmer Co., Inc. v. Higgins, 23 F.3d 448, 451-53 (D.C. Cir. 1994), which rejected an ATF classification finding the administrative record did not contain the Bureau's reasoning and its determination was "incredible." See DN 19-1 at 23.  Here, ATF provided an administrative record of just over 900 pages and has made its reasoning abundantly clear.

The rule of lenity is to be applied "only if, after considering text, structure, history and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended." Abramski v. United States, ___ U.S. ___, 134 S. Ct. 2259, 2272 n.10 (2014); see also id. (that a narrower construction is possible "is not the appropriate test").  As the plaintiff admits, "[n]o ambiguity exists regarding the meaning of 'intended only for use.'" DN 19-1 at 18.  If there is no ambiguity, there is certainly no "grievous" ambiguity and the rule of lenity is inapplicable.  That the GCA is a criminal statute does not mean the rule of lenity automatically applies in the absence of ambiguity.  See Modern Muzzleloading, 18 F. Supp. 2d at 33 (noting that the GCA was "criminal in nature" but recognizing that the "fact that the statute is criminal in nature is simply not enough to invoke the rule of lenity.")  Moreover, the decision in United States v. Thompson/Center Arms Co., 504 U.S. 505, 515-16 (1992), offers little by way of example, for that opinion specifically stated that because "the definition of silencer does not, therefore, bear the implication Thompson/Center would put on it, that definition cannot give us much guidance in answering the question before us."

VI.     CONCLUSION.

While the plaintiff disagrees with the classification of its submission as a silencer, that is not the standard of review under the APA.  The classification was reasonable and supported by a rational basis—the manufacturer's stated intent as a muzzle brake, the manufacturer's other indicia of intent showing the item to be a silencer, and the submission's design features, which are consistent with a well-recognized silencer part known as a monolithic baffle stack.  To overturn the classification would be to make the label a manufacturer affixes to an item controlling and allow incidental effects to render the statute meaningless.

                                        Respectfully submitted,

                                        JOHN P. KACAVAS
                                        United States Attorney

                                        T. David Plourde
                                        Chief, Civil Division

                                        By: /s/ William J. Ryan
                                        William J. Ryan
                                        Special Assistant U.S. Attorney
                                        District of New Hampshire
                                        Office of Chief Counsel
                                        Bureau of Alcohol, Tobacco, Firearms and Explosives
                                        244 Needy Road, Room 1119
                                        Martinsburg, WV 25405-9431
                                        304-260-1509
                                        William.J.Ryan2@usdoj.gov

Dated: February 10, 2014

## CERTIFICATE OF SERVICE

     I hereby certify that on this 10th day of February, 2015, a copy of the above Memorandum in Objection to Plaintiff's Motion for Summary Judgment was served this date, via the ECF System on Mark C. Rouvalis, Esq.; Kenton Villano, Esq.; and Stephen P. Halbrook, Esq., counsel for the plaintiff.

                                        /s/ William J. Ryan

                                        William J. Ryan, SAUSA