IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| SIG SAUER, INC., )<br>    Plaintiff )<br> )<br>        v. )<br> )<br>B. TODD JONES, )<br>    Defendant ) | Civil Action No. 1:14-cv-00147-PB |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF
SIG SAUER'S MOTION FOR SUMMARY JUDGMENT
AND REQUEST FOR ORAL ARGUMENT**

Plaintiff Sig Sauer, Inc., by counsel, hereby replies to Defendant's Memorandum in Objection to Plaintiff's Motion for Summary Judgment (hereafter "ATF Obj.").

**Introduction**

ATF's Objection fails to refute Sig Sauer's entitlement to summary judgment. Sig Sauer's intent to design an effective muzzle brake which can be adapted to various uses is not impeached by the unidentified internet source ATF improperly cites. The intent to use the device other than as a silencer is objectively shown by its usefulness as a muzzle brake. The handguard that Sig replaced and the shipping records reflecting compliance with ATF's directive fail to imply that the device is not a muzzle brake.

Labeling the device a "monolithic baffle core" fails to obscure that it is not even close to being "intended only for use" in a silencer. Whether an item is a silencer must be decided according to the same interpretative rules in a civil case as in a criminal case.

**I. SIG SAUER'S INTENT TO DESIGN AN EFFECTIVE MUZZLE BRAKE
WHICH CAN BE ADAPTED TO VARIOUS USES IS NOT IMPEACHED
BY THE UNIDENTIFIED INTERNET SOURCE ATF IMPROPERLY CITES**

Sig Sauer's initial letter to ATF described the device as a muzzle brake attached to a barrel 16" in length and advised: "The muzzle end of the brake is threaded to provide the

1

customer with the after-market option of attaching muzzle devices such as flash hider, muzzle brake, or silencer. The muzzle brake is designed and intended to reduce the felt recoil of the firearm by directing the propellant gases perpendicular to the axis of the bore." Letter dated April 4, 2013, Administrative Record ("AR") 790.

ATF introduces a *post hoc* litigation argument that the agency never made when rendering its decisions,[1] and it is based on an unidentified internet source which is not competent evidence. ATF asserts that Sig found that "[a] short barrel and silencer combination results in reduced pressure," and when it designed the rifle with a 16" barrel, Sig "attached the monolithic baffle stack and, knowing it was a basic silencer part, argued that it was a 'muzzle brake' to make it available to the civilian market without NFA regulation." ATF Obj. 2, citing AR 715.

The source cited, AR 715, is an internet posting of unknown origins and is not credible.[2] It states about the Sig device: "That muzzle brake is far more important than just a way to keep the weapon civvie-legal. . . . According to Annette from Armed Candy, it doubles as the baffle system for an integral suppressor." ATF deleted the reference to "Annette from Armed Candy." ATF Obj. 2-3. The actual statement suggests nothing more than that the device is usable as a muzzle brake and that it can be adapted by the addition of other parts to use as a silencer.

Citing the same source, which mentioned an image of a suppressor and the threaded device, ATF asserts that the device "is threaded for the very purpose of receiving an end cap to be encased by an outer tube." ATF Obj. 6, citing AR 715. But threading is neutral as to what is screwed on, allowing the consumer who so chooses to attach a flash hider, muzzle brake,

---

[1] See AR 971 (initial decision), AR 809 (reaffirmation), AR 810 (after remand).
[2] *See People's Mojahedin Organization of Iran v. U.S. Dept. of State*, 182 F.3d 17, 19 (D.C. Cir. 1999) (referring to an administrative record that included "material on the Internet or other hearsay" as "certainly not evidence of the sort that would normally be received in court.").

silencer, compensator, or blank firing adapter. Sig Sauer to ATF, April 4, 2013, AR 790; Ethan Lessard Declaration ("EL Dec."), ¶ 20, AR 865.

In short, the internet source is not competent evidence and it does not support ATF's assertions.

## II. THE INTENT TO USE THE DEVICE OTHER THAN AS A SILENCER IS OBJECTIVELY SHOWN BY ITS USEFULNESS AS A MUZZLE BRAKE

Contrary to ATF, Sig has never argued that "no item may ever be classified as a silencer so long as the manufacturer calls it by another name or for which it simply claims a dual purpose." ATF Obj. 1-2. Evidence of a manufacturer's intent is demonstrated when a product functions exactly as it is called. As for removing an item from "the silencer part definition simply because it serves a dual purpose," *id*. at 2, an item would not be within that definition in the first place if it has a dual purpose rendering it not "intended only for use" in a silencer.

Noting that "a manufacturer's stated intent is not determinative," ATF adds that "[t]o hold otherwise would render the 'any part' definition of section 921(a)(24) meaningless." ATF Obj. 3. But the definition refers to "any part *intended only for use*" in a silencer. ATF would reword it to refer to "any part that may be used in a silencer and also in other devices."

Without any citation to the record, ATF asserts that "the incidental reduction of recoil would make almost all silencer components not '*only*' for use in the assembly of a silencer." ATF Obj. 3. But it is quite plausible that many or even most items that can be used as parts for a silencer are not intended only for that use. ATF's list includes items like "baffles or washers," "tubes" that may serve any number of functions, "baffling materials" which includes steel wool, "end caps," and so on. ATF Obj. 5. And that is not to mention potatoes, plastic bottles, and air gun silencers, as noted in *United States v. Crooker*, 608 F.3d 94, 97 (1st Cir. 2010).

ATF pays superficial homage to the characterization of the definition of silencer as having "three tests as gradations of purpose made more rigorous as the statute extends from a self-sufficient device to a collection of parts to a single part." ATF Obj. 4, quoting *Crooker*, 608 F.3d at 97. But ATF disregards that the first definition – that of a device "for" silencing a firearm – "does not refer either to capability or adaptation," and that it does not suffice that a "device fitted with an adapter would be objectively capable of functioning as a silencer for a firearm . . . ." *Id*. at 97. Even further removed from being adaptable to use as a silencer than was the airgun silencer in *Crooker*, the Sig device must be judged under the third, "any part," definition of silencer that has the highest "gradation[] of purpose" of the three definitions.[3]

Brushing off *Crooker*, ATF discounts "a manufacturer's declared intent" for a part that may "incidentally serve dual functions." ATF Obj. 4. But the Sig device, in and of itself, functions solely as a muzzle brake – that is not "incidental." It is only "incidental" that a user may, but need not, attach other devices, whether a flash suppresser, blank firing adapter, or silencer. EL Dec. ¶ 20, AR 865.

*United States v. Syverson*, 90 F.3d 228, 232 (7th Cir. 1996), stated: "Because Syverson was the designer and manufacturer of the cylinder, his intentions determine whether it purported to be a silencer." ATF misreads the context to be that "the court was actually paraphrasing one of Syverson's arguments, not endorsing it . . . ." ATF Obj. 4. To the contrary, the court applied this test and found that the defendant "intended the cylinder to be a silencer." *Id*.

The evidence in *Syverson* proved that the item was "for" silencing a firearm and was not a muzzle brake. First, muzzle brakes "usually have slots cut into them; these slots are the means

---

[3] ATF seeks to avoid the implications of its adaptivity test by noting that Sig "did not submit a lawn mower muffler for classification to ATF . . . ." ATF Obj. 1. But a lawn mower muffler would require only an adapter to mount it on a firearm, making it far more adaptable to use as a silencer than is the Sig device.

by which muzzle breaks [*sic*] disperse the hot gases expelled from a gun barrel. Syverson's cylinder had no slots." *Id*. The Sig device has slots. Second, "Syverson's cylinder would not have done much, if anything, to reduce the recoil of a firearm." The Sig device effectively reduces recoil. Third, "the cylinder did reduce the report of a pistol, albeit slightly." *Id*. The Sig device increases the report of the firearm.

ATF also misreads why a certain jury instruction was not given in *United States v. Hurd*, 642 F.2d 1179, 1181 n.1 (9th Cir. 1981). ATF Obj. 5 n.3. The defendant's theory of the case was adequately stated in the instruction that was given, defining a silencer in part as "a device one of the primary functions of which is to reduce the noise occasioned by the discharge of any portable weapon . . . ." Defendants argued that noise reduction was incidental and that the primary purpose was "to stabilize the barrel, reduce recoil and eliminate the flash caused by firing." *Id*. at 1182. The court explained: "If the jury had agreed with the defendants that noise reduction was an incidental function of the devices, the court's instruction clearly required them to find that the devices were not silencers because noise reduction would not have been a primary function." *Id*.

### III. THE HANDGUARD THAT SIG REPLACED AND THE SHIPPING RECORDS REFLECTING COMPLIANCE WITH ATF'S DIRECTIVE FAIL TO IMPLY THAT THE DEVICE IS NOT A MUZZLE BRAKE

ATF ignores Sig's intent shown by the elephant in the living room – the inherent utility of a rifle with a 16" barrel, an effective muzzle brake, and a mechanism that operates with safe pressures. Instead, ATF piles inference upon inference to speculate that Sig's intent is otherwise. First, "the initial submission included a hand guard which would burn the shooter's hand if utilized as a muzzle brake . . . ." ATF Obj. 4-5. ATF disregards that the designer, Ethan Lessard, explained under penalty of perjury:

5

> The first MPX rifle sample Sig Sauer sent to ATF, in April 2013, was a prototype with a longer handguard that covered some of the muzzle brake as well as the rifled barrel. It was sent to ATF because SIG did not have any shorter handguards available at the time. The second sample, sent to ATF in June 2014, had the shorter handguard that extends no further than the muzzle of the barrel.  The second sample is a more developed prototype that is closer to the configuration that will be produced for commercial distribution.

EL Dec. ¶ 39, AR 869.

It was not until *after* ATF received the sample with the correct handguard in June 2014 that ATF first suggested, in its letter received August 15, 2014, that the initial sample indicated intent to use it with an outer tube. *Id*. ¶ 40, AR 869-70.  Sending the correct handguard was thus not in response to ATF's *post hoc* suggestion, which has no factual basis.

ATF's second reason for speculating that the device, despite its utility otherwise, is actually "intended only for use" in a silencer is the fact "that the identical item number was given for two identical items—both labeled as silencers although one is the purported 'muzzle brake' at issue."  ATF Obj. 4-5.  This reflected Sig's compliance with ATF's letter of August 26, 2013, opining that the device is a silencer, stating that it was returning it to Sig, and instructing: "Upon receipt, you must register this silencer no later than the close of the next business day."[4]  AR 666.

The documents sent to ATF with samples in which Sig described the device as a silencer include a Packing Slip (AR 856) and a Sales Order Acknowledgment showing $0 due (AR 855).  They are standard commercial documents as used for sale of products to customers.  Labeling the device as a "silencer" would preclude unrestricted sales and ensure compliance with ATF's decision in day-to-day marketing operations.  "Sig Sauer's calling the item a 'silencer' and using

---

[4] For registration, a notice of each firearm (defined to include a silencer) manufactured must be "filed by the manufacturer no later than the close of the next business day." 27 C.F.R. § 479.103.

6

the same part number for both samples reflects its compliance with ATF's determination.  That will change if the court rules otherwise." Steven Shawver Dec. ¶ 27, AR 878.

ATF responds with more inferences: "The plaintiff's explanation that it was simply complying with ATF's classification rings hollow, . . . for the plaintiff has taken great pains to label its submission a muzzle brake in every other context." *Id*., citing AR 640 (You Tube video at shot show).  Yet that video was "Published on Jan. 17, 2013."[5]  ATF's letter calling it a silencer was dated months later, on August 26, 2013.[6]

## IV. LABELING THE DEVICE A "MONOLITHIC BAFFLE CORE" FAILS TO OBSCURE THAT IT IS NOT EVEN CLOSE TO BEING "INTENDED ONLY FOR USE" IN A SILENCER

ATF seeks to circumvent the statutory language "intended only for use" with an adaptivity test that would apply to muzzle brakes in general.  While not denying that the Sig device reduces recoil and muzzle rise through the use of baffles, ATF argues that use of the term "muzzle brake" is just a label.  ATF seeks to obscure its function as an effective muzzle brake by using its own esoteric label – that of the "monolithic baffle core."  ATF Obj. 1.  The substitution of linguistics for physical properties cannot eviscerate the clear statutory meaning.

ATF refers to the legislative history stating that "conventional" muzzle brakes are not silencers, but avers that the device here is a "conventional monolithic baffle core."  ATF Obj. 5.  Such non-statutory characterizations fail to come to grips with the unquestioned fact that the device is nowhere close to being "intended only for use" in the assembly of a silencer.

---

[5] ATF failed to insert that information with the video in the administrative record, but it may be found at https://www.youtube.com/watch?v=1S_aqUDb62Q (visited Feb. 11, 2015).
[6] The other items cited by ATF were Sig's submissions to ATF explaining why the device is a muzzle brake and not a silencer.  AR 790 (letter dated April 4, 2013), 796 (letter dated Dec. 6, 2013), 859-872 (Lessard declaration), 873-879 (Shawver declaration).

In describing the device, ATF jumps from its actual physical properties to what it would be if combined with other parts to make a silencer, including not just baffles, holes, and slots – which are common to muzzle brakes in general – but also "expansion chambers" capable of "capturing hot gases created by the burning of propellant powder." ATF Obj. 6.  Without a cover and an end cap, the device has no chambers and captures no hot gases.

The second definition of silencer, which is inapplicable here, is "any combination of parts, designed or redesigned, and intended for use in assembling or fabricating" a silencer.  18 U.S.C. § 921(a)(24).  If so intended, any muzzle brake – not just the Sig device – "when combined with an outer tube and end cap," meets that definition.  ATF Obj. 6.  By contrast, this case concerns whether the Sig device by itself, without such other parts, is under the third definition of "any part intended only for use in such assembly or fabrication."

In conceding that the Sig device "did not reduce sound" when tested, ATF adds that monolithic baffle cores did not reduce sound either.  ATF Obj. 6.  Neither do various muzzle brakes when uncovered.  But as Sig's tests demonstrate, a muzzle brake will reduce sound when covered, and the reduction is equivalent to the decibels reduced by the Sig device when covered.  EL Dec. ¶S 43, 46, 48, AR 870-72, AR 870.[7]

ATF presents virtually the same list of supposed silencer features as in *Innovator Enterprises, Inc. v. Jones*, Civil No. 13-581, 2014 WL 1045975, *2 (D. D.C. Mar. 19, 2014).  ATF Obj. 5.  ATF states that "it is not possible to apply any type of rigid formula (i.e., 5 out of 10 characteristics must be present, etc.) in making classifications." *Id*. at 6.  But ATF took that very approach here, even though the device is not even on the list.  As *Innovator* stated: "A

---

[7] Sig duly registered the muzzle brakes that it covered with radiator hose for testing, as that made them silencers.  EL Dec. ¶ 43, AR 870.

8

mouse is not an 'elephant' solely because it has three characteristics that are common to known elephants: a tail, gray skin, and four legs." 2014 WL 1045975, *7.

ATF dismisses the criticisms made in *Innovator* as irrelevant because the Sig device "is a part, not an entire device" as in that case. ATF Obj. 6. That leaves the Sig device even further removed from being considered a silencer, as it is judged under the third definition's most rigorous "gradation[] of purpose." *Crooker*, 608 F.3d at 97.

### V. WHETHER AN ITEM IS A SILENCER MUST BE DECIDED ACCORDING TO THE SAME INTERPRETATIVE RULES IN A CIVIL CASE AS IN A CRIMINAL CASE

ATF claims deference to its opinions even though the provisions at issue are criminal laws. It relies on decisions that deferred to agencies on matters with no criminal consequences, from denial of permits to import firearms to denial of social security benefits. ATF Obj. 7. It finds irrelevant the precedents that apply criminal statutes in civil cases.

*United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 515-16 (1992), "offers little," ATF Obj. 8, as it stated that the definition of silencer gave little guidance "in answering the question before us." Indeed not, as the case did not involve a silencer. But the decision applies in a broader way. First, in a civil case about a criminal statute, ATF gets no deference on whether the definition of a type of firearm applies to a given product. *Id.* at 517-18. Second, parts with dual uses may not be pigeonholed into a restricted category recognizing only one of those uses. *Id*. at 512-13.[8]

*F. J. Vollmer Co., Inc. v. Higgins*, 23 F.3d 448, 451-52 (D.C. Cir. 1994), refused to defer to ATF on whether a certain rifle was a machinegun. While finding that the administrative record did not "contain the reasoning" behind ATF's interpretation, the court did not remand the

---

[8] The definition at issue was of the term "rifle," which included a weapon "intended to be fired from the shoulder." *Id*. at 507. The definition here, with the words "intended *only*," is stricter.

9

matter in part because violation "is a criminal offense." *Id*. at 451.  The court found ATF's application of the law to the product to be erroneous.  *Id*. at 452.[9]

ATF seeks to distinguish *F. J. Vollmer* by stating: "Here, ATF provided an administrative record of just over 900 pages and has made its reasoning abundantly clear."  ATF Obj. 7 n.5.  Yet hundreds of these pages, including scores of patents and internet postings, include little or nothing of direct relevance to this case.  The law and the facts here are quite simple, and they establish that the device is not a part "intended only for use" in a silencer.

## Conclusion

ATF concludes: "To overturn the classification would be to make the label a manufacturer affixes to an item controlling and allow incidental effects to render the statute meaningless."  ATF Obj. 8.  Sig Sauer's intent is demonstrated in the physical attributes of a rifle with a muzzle brake that reduces recoil and muzzle rise, has a 16" barrel, and has safe pressures when firing.  Those features are not "incidental" – they are the essence of the product.

Accordingly, this Court should grant Sig Sauer's motion for summary judgment and deny ATF's motion for summary judgment.

## Statement in Support of Oral Argument

Pursuant to Local Rule 7.1(d), Plaintiff states that oral argument would provide assistance to the court.  This is one of only two known civil cases nationwide ever to challenge ATF's classification of a muzzle device as a silencer.  It involves technical issues and facts that will be simplified by showing the Court the actual device at issue and explaining how it functions.  Argument may also be helpful regarding the unique interpretative issue involving agency action in the context of criminal statutes.

---

[9] The court did not find the statute to be unclear, but "[e]ven if we were less certain" about its application, the rule of lenity would then apply.  *Id*. at 451.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | Sig Sauer, Inc.<br>By counsel |
| Date:  February 27, 2015 | /s/ Stephen P. Halbrook<br>Stephen P. Halbrook, *Pro Hac Vice*<br>Suite 403<br>3925 Chain Bridge Road<br>Fairfax, VA 22030<br>(703) 352-7276<br>(703) 359-0938 (fax)<br>protell@aol.com |
|  | /s/ Mark C. Rouvalis<br>Mark C. Rouvalis, NH Bar No. 6565<br>Kenton J. Villano, NH Bar No. 21220<br>City Hall Plaza<br>900 Elm Street<br>Manchester, N.H. 03101<br>(603) 628-1329<br>(603) 625-5650 (fax)<br>mark.rouvalis@mclane.com<br>kenton.villano@mclane.com |
|  | Counsel for Sig Sauer, Inc. |

**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed by the ECF system and served on all counsel of record electronically as a result thereof on the 27th day of February, 2015.

/s/ Mark C. Rouvalis
Mark C. Rouvalis