**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Sig Sauer, Inc.</u>

    **v.**

<u>B. Todd Jones, Director,</u>
<u>Bureau of Alcohol, Tobacco,</u>
<u>Firearms and Explosives</u>

Case No. 14-cv-147-PB
Opinion No. 2015 DNH 184

<u>**MEMORANDUM AND ORDER**</u>

The National Firearms Act ("NFA") imposes strict registration requirements and a special tax on anyone who makes, sells, or possesses certain dangerous weapons such as machine guns, short-barreled rifles and silencers. 26 U.S.C. §§ 5801-72. Sig Sauer, Inc. plans to produce and sell a rifle with a silencer component known as a "monolithic baffle core" that is permanently affixed to the barrel of the rifle. It contends that the baffle core is exempt from registration under the NFA because it does not meet the statutory definition of a silencer. The Bureau of Alcohol, Tobacco, and Firearms ("ATF") rejected Sig Sauer's argument in an informal adjudicatory proceeding and instead concluded that the baffle core should be treated as a silencer under the NFA. 18 U.S.C. § 921(a)(24). The issue this case presents is whether the AFT's determination was "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance of law" under the Administrative Procedure Act

("APA"), 5 U.S.C. § 706(2)(A).


## I.    BACKGROUND

### A.    Statutory Framework

The NFA applies to "particularly dangerous weapons," United

States v. Posnjak, 457 F.2d 1110, 1113 (2d Cir. 1972), including

shotguns with barrels less than 18 inches in length, rifles with

barrels less than 16 inches in length, machineguns, silencers,

and destructive devices.  26 U.S.C. § 5845(a) (defining

"firearm" for purposes of the NFA).  The NFA sets "rigorous

registration and taxation requirements for the dealers and

transferors of those weapons."  Posnjak, 457 F.2d at 1113.  For

example, each NFA firearm must be registered in a central

federal registry and bear a serial number.  26 U.S.C. §§ 5841,

5842.  The NFA also imposes a $200 tax on the making of an NFA

firearm and on each subsequent transfer of the firearm.  26

U.S.C. §§ 5811, 5821; see Posnjak, 457 F.2d at 1114.  Violations

of the NFA are punishable by substantial fines and imprisonment

for up to ten years.  26 U.S.C. § 5871.

The NFA adopts the definition of the term "firearm

silencer" used in the Gun Control Act ("GCA").[1]  18 U.S.C. § 921(a)(24) (GCA definition of silencer); 26 U.S.C. § 5845(a) (incorporating GCA definition by reference).  Under the GCA, a firearm silencer is defined as:

> [A]ny device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication.

18 U.S.C. § 921(a)(24).  This definition broadly encompasses both completed silencers and parts that can be used to produce silencers.  Any combination of parts that is intended to be used to produce a silencer will be deemed to be a silencer under both the NFA and the GCA, and a single part can qualify if it is "intended only for use" in a silencer.

**B.  <u>Sig Sauer's Classification Request</u>**

On April 4, 2013, Sig Sauer submitted a prototype firearm to the ATF and sought confirmation that the prototype would not

---

[1] The GCA imposes its own licensing requirements on manufacturers, importers, and dealers of silencers.  <u>See</u> 18 U.S.C. §§ 921(a)(3)(C), 923.  In addition to silencers, the GCA also applies to "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive."  18 U.S.C. § 921(a)(3)(A).  Accordingly, the GCA will apply to the rifle Sig Sauer plans to manufacture regardless of whether the baffle core is considered a silencer.

be subject to registration under the NFA.[2]  <u>See</u> A.R. 790.[3]  As

proposed, the device combined a short-barreled rifle with a

monolithic baffle core[4] that Sig Sauer uses in producing

silencers. <u>See</u> A.R. 824. Sig Sauer explained in a letter

submitted with the prototype that it intended the baffle core to

serve as a muzzle brake[5] and not a silencer.  <u>See</u> A.R. 790 (doc.

no. 15).  It also asserted that its prototype would not be

subject to registration under the NFA as a short-barreled rifle

because the combined length of the prototype's barrel and the

_____

[2] The ATF encourages firearms manufacturers to submit devices for
classification before they are offered for sale.  <u>See</u> Bureau of
Alcohol, Tobacco, Firearms and Explosives, National Firearms Act
Handbook 7.2.4 (2009), <u>available at</u>
<u>https://www.atf.gov/firearms/national-firearms-act-handbook</u>.  It
responds to classification requests with letter rulings that
represent "the agency's official position concerning the status
of the firearms under Federal firearms laws."  <u>Id.</u> at 7.2.4.1.
No statute or regulation requires either manufacturers to submit
devices for classification or the ATF to issue classification
letters.

[3]  The Administrative Record (doc. no. 15), filed conventionally
with the court on November 3, 2014, is hereafter referred to as
"A.R."

[4]  A monolithic baffle core is "an internal silencer part
consisting of a series of integral expansion chambers, baffles,
angled baffles, holes or slots designed to aid in diverting and
capturing hot gases created by the burning of propellant powder.
. . ."  A.R. 818 (citation and internal punctuation omitted).

[5] A muzzle brake is a device affixed to the end of a firearm that
redirects discharge gases to reduce recoil and unwanted muzzle
rise.  <u>See</u> A.R. 816.

4

baffle core was 16 inches, the minimum barrel length that is sufficient to avoid classification as a short-barreled rifle. Id.

The ATF responded to Sig Sauer's request by noting that the baffle core was a silencer component and concluding, without further explanation, that it qualified as a silencer under the NFA because it was a part intended only for use in a silencer. See A.R. 791-93.

Sig Sauer followed up several months later with a request for reconsideration.  See A.R. 796-808.  In pressing its request, Sig Sauer reiterated its statement that it intended the baffle core to serve as a muzzle brake rather than a silencer. See A.R. 796.  It also submitted sound testing data for the prototype that showed that the baffle core did not reduce the sound of a firearm discharge when used without an outer tube. See A.R. 797.  Finally, Sig Sauer produced evidence supporting its claim that the baffle core functioned as a muzzle brake, and it identified several other devices that are manufactured and sold as muzzle brakes which, it argued, were similar to the baffle core. See A.R. 798.

The ATF responded with a one-page letter again stating without explanation that the baffle core was a "silencer" because it was "a part intended only for use in the assembly or

fabrication of a silencer."  A.R. 809.

Sig Sauer filed its complaint in this court on April 7, 2014.  On June 9, 2014, the parties filed a joint motion to stay the litigation to permit the ATF to reassess its determination that the baffle core qualified as a silencer under the NFA. Doc. No. 9.  Shortly thereafter, Sig Sauer submitted a second version of the prototype that was substantially similar to the original prototype except that the hand guard on the barrel of the rifle was in a different position.  See A.R. 822 (comparing the two prototypes).

Sig Sauer received a letter from the ATF on August 13, 2014 reaffirming its initial determination.  A.R. 810-29.  In explaining its position, the ATF dismissed Sig Sauer's sound testing evidence by explaining that a silencer part can qualify as a silencer regardless of whether, by itself, it reduces the sound of a firearm discharge.  A.R. 813.  The ATF addressed Sig Sauer's contention that it intended the baffle core to serve as a muzzle brake rather than a silencer by noting that although a manufacturer's statement of intention is relevant in determining whether a part is intended only for use in a silencer, it is not dispositive.  A.R. 813-14.  It then went on to consider other evidence that led it to conclude that the baffle core was intended only for use in a silencer.  In particular, it noted

that the design features of the baffle core were indicative of
its use as a silencer component rather than as a muzzle brake.
For example, it concluded that the baffle core more closely
resembled a silencer part in size and dimension than a muzzle
brake.  A.R. 818-21.  Finally, the ATF responded to Sig Sauer's
contention that the baffle core must be treated as a muzzle
brake because it actually functioned as a muzzle brake by noting
that the mere fact that a part could incidentally serve a
particular function does not establish that it is intended to
serve that function.  A.R. 824-25.

     Sig Sauer responded to the ATF on September 18, 2014.  <u>See</u>
A.R. 858.  With that response, it submitted a declaration from
one of its design engineers explaining that Sig Sauer chose a
device that was longer than other muzzle brakes because the
longer muzzle brake was needed to bring the combined length of
the rifle barrel and the muzzle brake to 16 inches, which
prevented the rifle from being subject to registration under the
NFA as a short-barreled rifle.  A.R. 859.  The design engineer
also discussed testing that showed that the baffle core is an
effective muzzle brake.  A.R. 866.

     On October 2, 2014, the ATF reaffirmed its decision in a
one-page letter.  A.R. 885.  It stated that it "considered
numerous factors in classifying [Sig Sauer's] submission,

including [Sig Sauer's] purported intended use of the item."

Id.  Nonetheless, it concluded that the part was a silencer

component and Sig Sauer's "alleged alternate use . . . does not

remove it from regulation under Federal law."  Id.

Sig Sauer filed an amended complaint on October 6, 2014.

Doc. No. 11.  The parties subsequently filed cross motions for

summary judgment.  See Doc. Nos. 18, 19.

## II.   STANDARD OF REVIEW

Summary judgment is warranted when the record reveals "no

genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  This standard was developed to provide parties with a

way to avoid the delay, expense, and uncertainty of a trial when

material facts are not in dispute.  Because a court may not

engage in fact finding when it decides a summary judgment

motion, ambiguous evidence, even if it is undisputed, ordinarily

must be construed in favor of the nonmoving party.  See Estrada

v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010).

In administrative law cases, however, "[t]his rubric has a

special twist."  Associated Fisheries of Me., Inc. v. Daley, 127

F.3d 104, 109 (1st Cir. 1997).  If the decision will be based on

the administrative record, the issue before the court will

ordinarily be the legal question as to whether the agency's action was "arbitrary, capricious, or otherwise contrary to law." Id.  In making this determination, an agency's factual findings are entitled to deference regardless of which party has moved for summary judgment.  Thus, the usual rules that describe how the court must construe the summary judgment record do not apply.  See Innovator Enters., Inc. v. Jones, 28 F.Supp.3d 14, 20 (D.D.C. 2014) ("[T]he standard set forth in Rule 56(a) does not apply because of the limited role of a court in reviewing the administrative record.").  Instead, "[t]he entire case on review is a question of law." Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (internal quotation omitted); see also Univ. Med. Ctr. of S. Nev. v. Shalala, 173 F.3d 438, 440 n.3 (D.C. Cir. 1999) ("[T]he question [of] whether [an agency] acted in an arbitrary and capricious manner is a legal one which the district court can resolve on the agency record . . . .").[6]

---

[6] The APA authorizes judicial review of "final agency action." 5 U.S.C. § 704.  Informal adjudication can qualify as final agency action if the agency has completed its decision making and no other adequate judicial remedy exists.  Butte Cnty v. Hogan, 613 F.3d 190, 194 (D.C. Cir. 2010).  In the present case, the parties agree that the ATF's classification ruling is final agency action reviewable under the APA.  Tr. at 11-12 (Doc. No. 31).

III.   **ANALYSIS**

Sig Sauer claims that the ATF made an egregious error when it concluded that the baffle core is subject to the NFA as a silencer.  Although Sig Sauer's arguments are somewhat difficult to disentangle, it appears to claim both that the ATF used an incorrect legal standard in making its decision and that it acted arbitrarily even if it used the correct standard.  Because the standards of review that govern these two arguments differ, I deal with them separately.

**A.   Did the ATF Base its Classification Ruling on Correct Legal Standard?**

Sig Sauer first argues that the ATF incorrectly used a purely objective test to determine whether the baffle core was intended only for use in a silencer, rather than the subjective test mandated by the First Circuit's decision in United States v. Crooker, 608 F.3d 94, 97 (1st Cir. 2010).[7]

In Crooker, the First Circuit considered whether a silencer designed for an air gun was a firearm silencer under the GCA because it was a "device for silencing" a firearm.  Id. at 96-97.  As I have explained, the applicable definition includes

---

[7] In responding to this argument, I assume for purposes of analysis that the ATF's interpretation of the NFA is entitled to deference only to the extent that it has the "power to persuade."  See, e.g., Innovator Enters., Inc. v. Jones, 28 F.Supp.3d 14, 22 (D.D.C. 2014) (applying Skidmore deference rather than Chevron deference to a classification ruling).

"any device for silencing" a firearm, any combination of parts "intended for use" in assembling a silencer, and any part "intended only for use" in a silencer.  18 U.S.C. § 921(a)(24). Although "a device for silencing" does not use the word "intended" - as the other two parts of the definition do - the First Circuit nonetheless held that the government was required to show that the defendant, who had directed the creation of the home-made device, "had a purpose to have the device function as a firearm silencer."  Id. at 99.  In reaching this determination, the court commented on the tripartite structure of the silencer definition and suggested that "it is as easy (perhaps easier) to view all three tests as gradations of purpose made more rigorous as the statute extends from a self-sufficient device to a collection of parts to a single part." Id. at 97.  Thus, the court embraced a subjective test when construing the silencer definition, where the subjective intent requirement applies most "rigorously" to single silencer parts.

Sig Sauer argues that the ATF's classification decision is incompatible with Crooker because the agency allegedly used a purely objective test to determine whether the baffle core was intended only for use in a silencer.  Because I conclude that the ATF applied the proper subjective intent test, I disagree. In reaching its decision, the ATF stated that "[w]hen

11

classifying a part as a firearm silencer, the statute imposes an intent requirement.  Therefore, the manufacturer's stated intent for the part is clearly relevant."  A.R. 814.  Although it also noted that "the objective design features of the part must support the stated intent," id., ATF did so merely to explain why it was not obligated to defer to a manufacturer's statement of intention when that statement is contradicted by objective evidence.  If, as Sig Sauer argues, the ATF had used a purely objective test to classify the baffle core, it would have had no reason to consider Sig Sauer's subjective intentions because the agency's classification decision would necessarily turn on purely objective factors.  In contrast, the fact that the ATF looked to objective evidence when evaluating Sig Sauer's statement of intention does not mean that it was using an objective test because objective evidence is always relevant in determining whether to accept a statement of subjective intention.[8]  Accordingly, I am unpersuaded by Sig Sauer's claim

---

[8] By considering objective evidence when reviewing a manufacturer's stated intent, ATF legitimately sought to avoid the "absurd result" of "[f]ederal regulation of only those firearms silencer parts that the manufacturer wanted to market as such, while leaving other firearm silencer parts completely unregulated." A.R. 814. By looking exclusively to subjective evidence, a manufacturer could, for example, "market silencers as 'flash hiders' or other devices simply by claiming that . . . they are not intended only to diminish the report of a portable firearm." Id.

that the classification ruling was inappropriately based on a
purely objective test.[9]

## B.   <u>Was the Classification Ruling Arbitrary or Capricious?</u>

Sig Sauer also argues that the ATF's classification ruling,
that Sig Sauer intended the baffle core only as a silencer part,
was arbitrary and capricious even if it was based on a
permissible construction of the NFA.

Agency actions are entitled to substantial deference under
the arbitrary and capricious standard.[10]  Although an agency
decision will be deemed to be arbitrary and capricious if "the
agency has relied on factors which Congress has not intended it
to consider, entirely failed to consider an important aspect of
the problem, offered an explanation for its decision that runs
counter to the evidence before the agency, or is so implausible

---

[9] To bolster its statutory interpretation argument, Sig Sauer
invokes the rule of lenity, a rule of statutory interpretation
that requires courts to resolve ambiguities in criminal
statutes, like the NFA, in the defendant's favor. See United
States v. Thompson/Center Arms Co., 504 U.S. 505, 517–18 (1992);
Doc. No. 19-1, at 18-23. Sig Sauer seemingly argues here that
the rule of lenity demands that I read the NFA's "intended only
for" language to create a subjective intent test. Id. at 22.
Because I conclude that the ATF in fact used a subjective test,
I need not determine whether such a test is required by the rule
of lenity.

[10] Sig Sauer agreed, at oral argument, that ATF's action here is
subject to arbitrary and capricious review. Tr. at 12-13 (Doc.
No. 31).

that it could not be ascribed to a difference in view or the
product of agency expertise," a reviewing court may not
"substitute its judgment for that of the agency." Motor Vehicle
Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463
U.S. 29, 43 (1983). Instead, if the agency has properly
considered the problem, its decision must be upheld if it is
"supported by any rational view of the record." Atieh v.
Riordan, No. 14-1947, 2015 WL 4855786, at *2 (1st Cir. Aug. 14,
2015).

In the present case, the ATF acted rationally in concluding
that Sig Sauer intended the baffle core to be used only as a
silencer part because the agency pointed to substantial evidence
in the record to support its determination. First, it is
undisputed that the baffle core is an essential silencer
component. Tr. at 55-56 (Doc. No. 31). It is, in fact,
identical in design and dimension to the baffle core contained
inside a removable Sig Sauer silencer. A.R. 824; see also Tr. at
55-56 (Sig Sauer's counsel conceding that Sig Sauer has
"basically taken the cap off [its] silencer . . . welded it into
the gun, and [marketed the baffle core] as a muzzle brake").
Second, Sig Sauer proposed to attach the baffle core to a pistol
caliber rifle, which the ATF determined did not need a muzzle
brake to function effectively. A.R. 818. Third, the ATF

14

examined other muzzle brakes on the market and concluded that
the baffle core was unlike other conventional muzzle brakes
because it included expansion chambers and was considerably
larger than the muzzle brakes that are already available for
sale.  A.R. 818-21.  Finally, it noted that muzzle brakes are
designed to be no larger than two to three inches, which is
considerably shorter than the baffle core, because a muzzle
blast discharges after two to three inches, making longer muzzle
brakes impractical.[11]  A.R. 822-23.  All of these observations
require expertise that is well within the ATF's grasp.  Thus,
its conclusions are entitled to substantial deference from a
reviewing court.  Marsh v. Or. Natural Res. Council, 490 U.S.
360, 378 (1989).

    Sig Sauer also argues that the ATF arbitrarily failed to
credit its test data, which shows that the baffle core will
actually function as a muzzle brake.  This argument misses the
mark because the ATF is not obligated to conclude that a

---

[11] Sig Sauer complains that the ATF failed to take note of the
fact that the baffle core's length would allow Sig Sauer to
market the rifle without special restrictions that are
applicable to rifles with a barrel less than 16 inches.  See
A.R. 873 (citing 18 U.S.C. § 921(a)(8), 26 U.S.C. § 5845(a)(3)).
However, Sig Sauer first raised this evidence in its September
18, 2014 request for reconsideration, after ATF had issued three
letters to Sig Sauer.  A.R. 869-70.  Despite Sig Sauer's
contrary contention, the ATF's ruling is not arbitrary or
capricious merely because it did not respond to an argument made
in the final stage of the process.

silencer part is intended to serve every function to which it could conceivably be put.  As the ATF noted, the baffle core is a heavy part that probably could function as a doorstop, but that does not mean that it is intended to serve that purpose. A.R. 814.[12]

Finally, Sig Sauer faults the ATF for inferring that Sig Sauer did not intend the baffle core to serve as a muzzle brake in part because its first prototype had a handguard placed in such a way that would make the muzzle core unusable as a muzzle brake because it would have "redirect[ed] hot gases onto the shooter's hand each time a projectile was fired."  A.R. 822. Although Sig Sauer argues that ATF should have examined only its second prototype – in which the hand guard did not cover any part of the device – the ATF was free to consider Sig Sauer's initial submission as evidence of its intended use even though Sig Sauer corrected this problem in the second prototype.

In summary, the ATF was presented with conflicting evidence as to whether Sig Sauer intended the baffle core to be used only as a silencer.  It considered the relevant evidence using the

---

[12]  Sig Sauer also complains that the ATF failed to account for sound testing data which shows that the baffle core does not, by itself reduce the sound of a firearm discharge.  The ATF met this contention by noting that whether a silencer part reduces the sound of a firearm discharge by itself is not determinative of whether it can be classified as a silencer.  A.R. 824.

correct legal standard and came to a rational conclusion based upon its expertise.  No more is required to sustain its decision.

### IV.   CONCLUSION

The ATF's classification of Sig Sauer's device as a firearm silencer was not "arbitrary, capricious, . . . or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Accordingly, I grant ATF's motion for summary judgment (doc. no. 18), and I deny Sig Sauer's motion for summary judgment (doc. no. 19).  The clerk shall enter judgment accordingly and close the case.

SO ORDERED.


                                        /s/Paul Barbadoro
                                        Paul Barbadoro
                                        United States District Judge


September 24, 2015

cc:   Stephen P. Halbrook, Esq.
      Kenton James Villano, Esq.
      Mark C. Rouvalis, Esq.
      T. David Plourde, Esq.
      William Ryan, Esq.